50 N.J. Super. 437 (1958)
142 A.2d 689
TOWNSHIP OF GLOUCESTER AND BOROUGH OF RUNNEMEDE, MUNICIPAL CORPORATIONS OF THE COUNTY OF CAMDEN, STATE OF NEW JERSEY, PLAINTIFFS,
v.
BOARD OF EDUCATION OF THE BLACK HORSE PIKE REGIONAL SCHOOL DISTRICT, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 3, 1958.
*438 Mr. Meyer L. Sakin and Mr. Vincent L. Gallaher, attorneys for plaintiffs.
*439 Mr. William F. Hyland, attorney for defendant Black Horse Pike Regional School District Board of Education.
Mr. David D. Furman, Acting Attorney-General (Mr. Thomas P. Cook, Deputy Attorney-General, appearing), attorney for defendant Commissioner of Education.
SCHALICK, J.S.C.
The plaintiffs, municipal corporations, and the Borough of Bellmawr, constitute the regional school district known as Black Horse Pike Regional School District. The authority of the school district is limited to the construction and operation of a high school, which was opened in September 1957 and is still being constructed and equipped.
Two elections were held in the municipalities pursuant to N.J.S.A. 18:8-16 and N.J.S.A. 18:8-16.1, and the total vote of all constituent school districts rejected all the items of the budget in the first election, and rejected the items of repairs and replacements for $6,500 and capital outlay (site improvements and equipment) for $44,500 in the second election. Thereafter, the boards of education submitted the rejected items to the governing bodies of the three municipalities as required by N.J.S.A. 18:8-16.2. These boards approved the repairs and replacement item, but only Bellmawr approved the capital outlay item and the other municipalities rejected it. The capital outlay item was submitted to the defendant Commissioner of Education pursuant to N.J.S.A. 18:8-16.3:
"Should the governing bodies of such municipalities fail to certify to the county board or county boards of taxation within such time prescribed in the previous section an amount which in their judgment is necessary for any of the items which the voters had rejected at the second election, or should the governing bodies fail to agree and certify different amounts, then in either such case the commissioner of education shall determine and certify to the county board or county boards of taxation the amount or amounts which in his judgment shall be necessary to provide a thorough and efficient system in the regional district. The amount or amounts so certified shall be included in the tax levied for such municipalities for such appropriations."
*440 The Commissioner of Education held a hearing and thereafter submitted the following opinion:
 "March 28, 1958
 Board of Education
 Black Horse Pike Regional High School District
 Schubert Avenue
 Runnemede, New Jersey
 Gentlemen: Attention: Mr. Elmer Hill, Secretary
We have reviewed the budget for capital outlay purposes submitted by the Board of Education of the Black Horse Pike Regional High School District for 1958-59 pursuant to R.S. 18:8-16.3. I am enclosing a copy of a certificate forwarded to the Camden County Board of Taxation certifying the amount which, in my judgment, will be necessary to provide a thorough and efficient program of education in your high school for the school year 1958-59. The amount certified represents a reduction of $4,000 from the amount submitted by the Regional Board of Education to the voters at both the first and second elections.
It is our opinion that your school is in need of the equipment you have specified and more if you hope to develop an educational program of high caliber. On the other hand, we must take into consideration the fact that one of your constituent school districts failed to approve the capital outlay proposal by a small margin at the polls. I would interpret this action as indicating a desire on the part of a few to postpone the cost rather than to eliminate it. For this reason, I would suggest the Board of Education consider making the following changes in its spending plans for the 1958-59 year:
1. Reduce the amount set aside for orchestra and band instruments by $500.
2. Limit the expenditure for grounds improvements, seeding, landscaping and fencing to $7,000.
In closing, I would like to compliment the Board and its staff members for their untiring efforts to develop a sound educational program under very difficult circumstances.
Very sincerely yours,
S/ F.M. Raubinger
 Commissioner of Education"
and forwarded his certification to the county board of taxation:
*441
March 28, 1958.
Camden County Board of Taxation,
City Hall, 11th Floor,
Camden, New Jersey.
Att: Mr. Patrick T. Corbett
 Secretary.
Gentlemen:
This is to certify that I have determined, pursuant to the provisions of Section 18:8-16.3 of the Revised Statutes, that, in my judgment, the following amount is necessary to provide a thorough and efficient system of public schools in the school district of the Black Horse Pike Regional High School District, Camden County for the school year beginning July 1, 1958 and ending June 30, 1959 and that the said amount is to be included in the tax levied for the Township of Gloucester and the Boroughs of Bellmawr and Runnemede for such purpose.

Capital outlay ............................ $40,500.00

This amount is in addition to the amounts previously certified for current expenses, repairs and replacements and bonds and interest for the school year 1958-59.

Current expenses ......................... $348,600.00
Repairs and Replacements ................. 6,500.00
Bonds and interest ....................... 175,959.00
 ___________
 Total ................... $531,059.00

 Very sincerely yours,
 S/ F.M. Raubinger
 Commissioner of Education"
The item as submitted to the voters was "Capital Outlay (site improvements and equipment) $44,500," and the same item was approved by the Commissioner of Education in the amount of $40,500.
The plaintiffs filed a complaint in lieu of prerogative writ seeking to set aside the determination and certification of the Commissioner of Education as to the budget item for capital outlay, and to limit the budget to the exclusion of the capital outlay item, restrain the Camden County Board of Taxation from including the capital outlay appropriation in the determination of the taxes to be levied for each municipality for school purposes for the current year, and directing the amendment of the total appropriation, by *442 the several boards, to the exclusion of the amount for capital outlay.
The plaintiffs predicate their right to relief on the allegation that the item capital outlay, as submitted to the voters at both elections, was illegal, and as a result the Commissioner of Education had no jurisdiction to make his determination. The plaintiffs relied on their allegations that the appropriation included in the capital outlay item should have been included in a bond issue, or should have been included in the designation of current expenses in the elections.
The defendants bring this issue before the court on motion to dismiss the complaint, claiming the court does not have jurisdiction, and it was stipulated by the parties that the decision of the court would be dispositive of the issues among the parties as set forth in the complaint. The defendants also take the position that an appeal must be taken from the determination of the Commissioner of Education to the State Board of Taxation, and its judgment is only reviewable by the Appellate Division of the Superior Court, or that the decision of the Commissioner of Education as a state administrative agency is only reviewable in the Appellate Division of the Superior Court, and further that the plaintiffs must first exhaust their remedies by appeal to the State Board of Education and then appeal to the Appellate Division of this court. As a result, the defendants allege that the plaintiffs have no right to proceed in the Law Division of the Superior Court by prerogative writ.
By the very act of certification of the disputed item by the Commissioner of Education, the county board of taxation is bound to include it in the assessment made against the municipalities, and unless the Law Division exercises its jurisdiction the futility of further action is obvious. If the origin of the assessment is illegal, all proceedings thereafter are of like import, and it gains no greater validity by certification by the Commissioner of Education or the action of the board of taxation thereafter.
*443 It is agreed by all parties that the legality of the item of capital outlay is the sole question involved. Our courts have not been limited in the interpretation of the rules applicable to such reviews to the mere classification of the acting parties but have penetrated into the administrative processes and considered the substantive determination which is the basis of administrative action. Without the original action of the boards of education, including this item in the budget, and their definition of what it includes, there would be no warrant for reference to the Commissioner of Education. The decision of the Commissioner and his compliance with the statutory provisions are not in issue, only to the extent that such action on his part may be predicated on that which the plaintiffs contend is without legality when it was certified by him. Certainly the review and determination of the Commissioner would not correct this situation if the issue was not legally submitted to the voters in the elections. The validity of the proposal submitted to the electors is the sine qua non, according to statutory requirements, before the question is even properly before the Commissioner. If it were otherwise, the requirement that any budget need be submitted to the voters would be useless, for the Commissioner would be authorized in the first instance to certify to the annual budget requirements of the school district without more. If this were solely a review of the administrative action of the Commissioner of Education, based on a valid certification to him of a valid proposal, the question to be considered would be quite apart from the problem sub judice.
The action of the boards of education must first be reviewed. From that source the right to appropriate originates, and after the ascertainment of the total amount of tax to be raised, then "the county board of taxation shall also apportion the amount to be levied in each taxing district for purposes of consolidated and regional school districts and school districts comprising 2 or more taxing districts." R.S. 54:4-48. The intervening statutory authority exercised by the Commissioner of Education to fix the amount of the *444 appropriation can neither legalize the origin nor validate the result, if the original proposal is void.
The only question involved here is a legal one and there is no logical reason to withhold the opinion of the court until further administrative appeals should be carried out. To give effect to, or to void the budget item, so that it may be properly included or excluded from the certification of the county board of taxation demands the urgency of action. The problem of the fixing of the tax rates for the constituent municipalities which, according to statute, should be certified promptly, as well as the fixing of the annual requirements of the needs of the school district, are problems which are so comprehensive and of such vital importance that this court is required to assume jurisdiction by prerogative writ. "It is manifest that the interests of justice require" such action. R.R. 4:88-14.
This decision conforms with our court's allocation of business between the Law Division and the Appellate Division, wherein proceedings relating to an administrative body with authority confined to a single locality should be brought in the Law Division even though the defendant may be classified for most purposes as an agency of the State, such as a county board of taxation and a local board of education. Baldwin Construction Co. v. Essex County Board of Taxation, 24 N.J. Super. 252 (Law Div. 1952), affirmed 27 N.J. Super. 240, 242 (App. Div. 1953).
The plaintiffs relied upon their interpretation of the item capital outlay, but in order that the actual problem involved shall be apparent, it is necessary to review the items which were included in that item by the boards of education under the ballot proposal "Capital Outlay (site improvements and equipment) $44,500." Affidavits filed in the cause indicate that the boards of education prepared a schedule which included the several items making up this total appropriation, and copies of that summary were distributed by the boards of education to the representatives of the governing bodies of the municipalities. An analysis of the schedule indicates that the proposed expenditures *445 were bracketed under equipment needed for instructional purposes, and equipment needed for non-instructional purposes.
Under the first classification were included Science Department, $6,105.40, specifying laboratory equipment and science equipment; Mathematics Department, $103.40, instructional equipment; Social Studies Department, charts and maps, $179.50; Business Education Department, typewriters, dictaphone transcribing units and records, duplicating equipment, adding machine equipment, filing equipment, $7,915.30; Distributive Education Department, display cabinets, shelving, mannequins and other display aids. $675; English Language Department, sound recorders, typewriter and stand, file cabinets, $827.50; Physical Education Department, mats, covers, racks, rehabilitation equipment, scale, $1,520; Medical Department, audiometer and medical aids, $350; Industrial Arts Department, tools, shelving, cabinets, files, drawing instruments, desks, &c, $5,526; Music Department, orchestral and band equipment, orchestral stands, &c, $2,989.60; Homemaking Department, furnishing laboratory equipment, $2,059.90.
In the second classification are included the items for the Maintenance Department of cleaning machines, vacuum cleaners, &c, $1,748.50. In addition to the foregoing are listed furniture and equipment for administrative offices $4,000; equipment for grounds and improvements including tractors, lawn mowers, tools for ground maintenance, $2,500; fencing to secure the safety and health of pupils, $3,500; seeding and landscaping of the premises, to control the maintenance of the premises in front of the school, $4,500.
A study of these items clearly indicates that all of them are properly within the classification of site improvement and equipment. The mere fact that the expenditure is designated as a capital outlay is of little significance, even though the term may, for some accounting purposes, have varied meanings.
Exhibit P-1, in evidence, is a manual of the New Jersey Public School Financial Accounting System for the use of *446 district clerks and others chargeable with the finances of boards of education in this State. In that exhibit capital outlay is defined as "The payment of money for anything which results in an increase of the total amount of property possessed by the school system." This manual further defines equipment as "Any article supposed to last year after year with reasonable use." A comparison of the proposed expenditures with these definitions indicates there is a compliance in the ballot proposal which is not only well defined, but that the same has been literally followed.
The proposal submitted to the voters was clear and "readily understandable," and the terms used, site improvements and equipment, are such common terms that they only convey the meaning given to them by the aforementioned schedules. N.J.S.A. 18:7-77.1; Citizens to Protect Public Funds v. Board of Education of Township of Parsippany-Troy Hills, 13 N.J. 172 (1953).
This school district is governed by the provisions of chapter 8 of Title 18 of the Revised Statutes. But this chapter must be read and considered with chapter 7, of Title 18 of the Revised Statutes, which latter statute governs all school districts having elected boards of education. The contention that the proposed appropriation must be included in the expenditures under the bond issue is without merit. The statute clearly defines the right of the board of education each year to prepare a budget for the ensuing year in which shall be shown the following:
"(1) the amounts of money estimated to be necessary to be appropriated for such ensuing school year, itemizing them separately so as to show the amounts required for
(a) the purchase or taking and condemning of land for school purposes,
(b) the building, enlarging, repairing or furnishing of a schoolhouse or schoolhouses,
(c) interest and debt redemption charges,
(d) industrial schools,
(e) evening schools or classes for foreign-born residents,
(f) current expenses of the schools including principals', teachers', janitors' and medical inspectors' salaries; fuel, textbooks, school supplies, flags, transportation of pupils, *447 tuition of pupils attending schools in other districts with the consent of the board, school libraries, compensation of district clerk, the custodian of school moneys and truant officers, truant schools, insurance, and the incidental expenses of the schools,
(g) appropriation to capital reserve fund,
(h) any other major purposes, and
(2) the amount appropriated for each of said items for the current school year, * * *."
Notation is made of the fact that the board of education may purchase or take and condemn land for school purposes in its annual budget, or it may build, enlarge, repair or furnish a schoolhouse, and sub-section (h) includes the overall provision of expenditures for any other major purpose.
To limit the annual budget expenditures to the classification of current expenses insofar as site improvements and equipment disbursements are concerned would be inconsistent with the statute, and furthermore, it is obvious that it was not the intent of the Legislature that such items shall be limited to financing by bond procedures. It would be an injustice to impose upon the taxpayers a costly improvement of a school building and then hamper and impede the administrative authorities in providing the equipment such as is included in the above-named schedule, which would be sorely necessary for the utilization of that building for school purposes. The intent of the statutes is to allow current appropriations to finance the annual costs, and also to provide all the necessary equipment and improvements to the site so that the building facilities may be used for the purpose intended.
The reason for empowering the Commissioner of Education to intervene when the electorate has defeated the proposal is a recognition of the necessity to provide a thorough and efficient program of education each year. To provide otherwise would lead to an inevitable stalemate and impede the continuity of the conduct of a school system. The right of the Commissioner to so act under such circumstances has been a part of our school law for many years. R.S. 18:7-83.
*448 The court concludes that the proposal was legally submitted to the voters and was properly defined on the ballot, and all information was available or provided to the electorate in order that they could intelligently exercise their right of franchise. Also, after the negative votes at the two elections, the proposal submitted to the Commissioner of Education was legal, and his exercise of the statutory authority was valid.
Complaint is dismissed and restraints are discontinued.