Angelo Graci, J.
The controversy before the court involves article 25 of the Environmental Conservation Law, known as the Tidal Wetlands Act (hereinafter the act), enacted "to preserve and protect tidal wetlands, and to prevent their despoliation and destruction, giving due consideration to the reasonable economic and social development of the state”. (ECL 25-0102.) Petitioner, the New York City Housing Authority (hereinafter authority) contends that the. act is inapplicable to property acquired by the authority through eminent domain and that, in any event, the authority has been deprived of property without just compensation, in violation of the United States and New York State Constitutions.
A review of the record reveals the following undisputed facts. In 1966, the authority designated a parcel of real property (hereinafter property) in Queens County as the site for a Federally-aided low income housing project and obtained the parcel through condemnation by the City of New York acting as agent for the authority. The project was terminated in 1971. In 1974, the authority contracted with Lindenwood Properties, Inc. (hereinafter Lindenwood), for the sale of the property. The contract and a subsequent modification thereto included options whereby Lindenwood could withdraw from the contract unless a ruling was forthcoming that the property was not subject to the act or, in the alternative, that permission was granted pursuant to the act for development of the entire property.
In May, 1974 the authority requested the Commissioner of the New York State Environmental Conservation Department *91 (hereinafter the commissioner) to determine whether or not the property was subject to the act. The commissioner determined that the property met the physical criteria of a tidal wetland and therefore was covered by the act. In July, 1974 the authority renewed its request for a determination, this time on the ground that pursuant to ECL 25-0602 the property was exempt from the act, as it was acquired by the authority through eminent domain. The commissioner determined, after receiving an opinion from the Attorney-General, that the property was not exempt. In November, 1974 the authority applied to the commissioner, pursuant to ECL 25-0202, for a moratorium permit to allow alterations otherwise prohibited by the act. The commissioner’s decision permitted alteration on only a portion of the property. In 1975 Linden-wood, exercising its option under the contract, withdrew the offer to purchase the property.
Subsequently, the authority initiated this proceeding under CPLR article 78. The commissioner cross-moves to dismiss the petition, in part on the ground that the Statute of Limitations applicable to article 78 has expired. (CPLR 217.) But since the authority attacks the applicability of the act to the property in question and also contends that the act is unconstitutional, both being attacks on the commissioner’s very power to act and not merely on the propriety of his action, the court treats the proceeding as an action for a declaratory judgment. (CPLR 103, subd [c]; Matter of Kovarsky v Housing & Development Administration, 31 NY2d 184; Dun & Bradstreet Inc. v City of New York, 276 NY 198; Matter of Sloan v Weber, 42 AD2d 1036; Matter of 700 Cent. Park Ave. Corp. v Russo, 35 AD2d 574, mot for lv to app den 29 NY2d 483; Lutheran Church in America v City of New York, 27 AD2d 237.)
ECL 25-0602 exempts from the act "any lands * * * appropriated by the state or any agency or department thereof under the power of eminent domain”. The authority claims that it is an agency of the State and cites, in support of its position, section 2 of the Public Housing Law which declares public housing authorities to be "agencies and instrumentalities of the state for the purpose of attaining the ends herein recited”. But such ends are specified by section 2 as the amelioration of substandard housing conditions and the provision of "adequate, safe and sanitary dwelling accommodations for persons of low income.” The sale of land to a private developer does not, on its face, further the ends recited in the *92 Public Housing Law and no evidence has been presented to the contrary.
Furthermore, the provisions of the Public Housing Law, together with the history of the operation of the authority, are consonant only with the concept of the authority as a separate entity, distinct from the State. (Ciulla v State of New York, 191 Misc 528; see, also, Bass v City of New York, 38 AD2d 407, affd 32 NY2d 894.) For example, the authority contracts with the State in its own name, on its own behalf and as a principal, both in form and substance. (Public Housing Law, § 37; Ciulla v State of New York, supra.) The authority is empowered to own real and personal property in its own name (Public Housing Law, § 37); to, in its own name, seek financial aid from Federal, State or municipal governments (Public Housing Law, §37); to undertake projects independent of financial aid from any government (Public Housing Law, §§ 39, 41); to contract, in its own name, with private parties (Public Housing Law, § 37); to sue and be sued (Public Housing Law, § 37) and to issue notes and bonds (Public Housing Law, §41). Neither the State nor municipalities are liable on the bonds or other obligations issued by the authority (Public housing law, § 51).
In Mount Vernon Housing Auth. v American Motorists Ins. Co. (21 AD2d 788), the court denied a request for a trial preference, holding "[T]he plaintiff * * * is neither a State agency (Ciulla v State of New York, 191 Misc 528) nor a political subdivision, of the State”. The Mount Vernon Housing Authority and the New York City Housing Authority are organized under the same law, namely, the Public Housing Law, and have the same powers thereunder.
Therefore, ECL 25-0602 does not exempt any property owned by the authority. Moreover, if any doubt remains, it should be resolved in favor of the general provisions of the act, rather than the exception, which should be strictly construed. (Matter of Charles, 200 Misc 452, affd 279 App Div 741, affd 304 NY 776.)
The court now moves to consideration of the primary issue presented for decision, namely, does the act operate to take property for public use without just compensation, in violation of the Federal and State Constitutions. The intention of the act is to - establish a comprehensive system of land-use regulations after an inventory of all tidal wetlands. (ECL 25-0201, 25-0302.) The regulations have not yet been promulgated. *93 Hence, any challenge to the constitutionality of the act as a whole is premature, for the regulations, when adopted, may allow of such use as the authority then envisions, or the authority may be able to obtain a permit under the full permit program. (ECL 25-0402.) In either event, the need for judicial scrutiny would be obviated at the outset. Courts refrain from rendering hypothetical adjudications, as where the existence of a "controversy” is dependent on the happening of future events. (Prashker v United States Guar. Co., 1 NY2d 584; Park Ave. Clinical Hosp v Kramer, 26 AD2d 613, affd 19 NY2d 958.)
Whatever restrictions have been imposed on the authority’s use of its property, these restrictions stem from the moratorium prohibiting any person from "altering] the state of any tidal wetland * * * prior to the effective date of the land-use regulations”, except by special permission from the commissioner. (ECL 25-0202.) It was under the aegis of this section that the commissioner made the determinations complained of here. Similar moratoriums have been enacted in other States, while in New York moratoriums are not uncommon in the form of "stop-gap” ordinances to allow for development of comprehensive zoning plans. The courts have upheld such moratoriums as valid and not a taking of property so long as they are for a reasonable purpose and of a reasonable duration. (Mutter of Golden v Planning Bd. of Town of Ramapo, 30 NY2d 359, app dsmd 409 US 1003; Matter of Rubin v McAlevey, 54 Misc 2d 338, affd 29 AD2d 874; Matter of Hasco Elec. Corp. v Dassler, 143 NYS2d 240, rehearing 144 NYS2d 857, affd 1 AD2d 889; Candlestick Props. Inc. v San Francisco Bay Conservation and Development Comm., 11 Cal App 3d 557 [sustaining a moratorium on the filling of tidewaters in San Francisco Bay]; Meadowlands Regional Development Agency v Hackensack Meadowlands Development Comm., 119 NJ Super 572 [sustaining a moratorium on construction in the Hackensack Meadowlands].)
The Legislature has a special duty to regulate tidal wetlands. (People of the Town of Smithtown v Poveromo, 71 Misc 524, revd on other grounds 79 Misc 2d 42; see also Shively v Bowlby, 152 US 1; Illinois Central R.R. v Illinois, 146 US 387.) The Legislature has found that wetlands constitute a vital natural resource in imminent danger of despoliation. (L 1973, ch 790, § 1, eff Sept. 1, 1973.) Preservation of the wetlands is essential (L 1973, ch 790, § 1, eff Sept. 1, 1973), and requires a *94 comprehensive system of land-use regulations. The regulations cannot be formulated until the completion of a State-wide inventory to demarcate wetland boundaries. Since the draining, filling or other alteration of property undertaken while such an inventory is in progress may irreparably damage wetlands, thereby rendering land use regulation academic even before it has been effectuated, the Legislature has enacted a moratorium on development. (Cf. Downham v City Council of Alexandria, 58 F2d 784.) Such a moratorium is reasonable; otherwise the Legislature would be forced to choose between two unpalatable alternatives — either to promulgate immediate regulations based on faulty or inadequate preparation, or else to compile the necessary information at the risk that further wetlands may be damaged in the meantime. Although the court recognizes the duty of protecting individual owners, reasonable efforts to adjust land use to modern needs should not be thwarted at their inception.
Neither may it be said that the moratorium has up to this date run for an unreasonable period of time. Whether or not a moratorium is of a reasonable duration depends upon the particular facts of each case. Here, it must be noted that the afore-mentioned inventory is feasible only during the summer growing season, when the wetlands can be identified. In addition, the act contemplates public hearings and conferences with local government officials (ECL 25-0201, 25-0301) — prudent measures considering the many interests that may be affected by land use regulations. The moratorium provision of the act had been in effect for slightly less than two years. Such a period is not without precedent. In somewhat similar circumstances, the New Jersey courts upheld a moratorium on development in the meadowlands for a two-year period plus a two-month extension as not being unreasonable under the circumstances. (Meadowlands Regional Development Agency v Hackensack Meadowlands Development Comm., supra.) Moratoriums of considerably longer duration have been sustained by the courts in zoning cases. (Golden v Planning Bd. of Ramapo, supra [upholding an 18-year restriction on development concomitant to the formulation of a comprehensive zoning plan]; Campana v Clark Twp., 82 NJ Super 392 [allowing a 4-month extension to a 31-month interim plan pending completion of a study of community needs].)
The motion to dismiss the petition is denied. Since there are no factual issues presented, the court makes the following declarations on the merits of the controversy. The court *95 declares that ECL 25-0602 does not exempt from the act any property acquired by the authority through eminent domain. The court further declares that ECL 25-0202, entitled "Moratorium on alteration of tidal wetlands” is constitutional, on its face and as applied to the authority, and does not sanction a taking of property without just compensation. The court makes no declaration as to the constitutionality of any other section of the act.