186 N.J. Super. 432 (1982)
453 A.2d 200
ORLEANS BUILDERS & DEVELOPERS, APPELLANT,
v.
BRENDAN T. BYRNE, GOVERNOR OF THE STATE OF NEW JERSEY, JERRY F. ENGLISH, COMMISSIONER OF THE DEPARTMENT OF ENVIRONMENTAL PROTECTION, NEW JERSEY PINELANDS COMMISSION, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1982.
Decided May 14, 1982.
*434 Before Judges BOTTER, ANTELL and FURMAN.
Frank H. Wisniewski argued the cause for appellant (Archer, Greiner & Read, attorneys; Frank H. Wisniewski, Charles Lee Harp, Jr. and Patrick F. McAndrew on the brief).
Richard M. Hluchan, Deputy Attorney General, argued the cause for the respondents (Irwin I. Kimmelman, Attorney General, attorney; James R. Zazzali, former Attorney General, and Andrea M. Silkowitz, Deputy Attorney General, of counsel).
FURMAN, J.A.D.
Orleans Builders and Developers (Orleans) appeals from the denial of its application for a major development by the New Jersey Pinelands Commission. The constitutional validity of legislative and executive action imposing a building moratorium in the New Jersey pinelands is at issue.
In 1978 Congress amended the National Parks and Recreation Act to establish a Pinelands National Reserve of approximately one million acres in the State of New Jersey. 92 Stat. 3492, 16 U.S.C.A. § 471i. Responsibility for the development of a comprehensive management plan to protect the resources of the Pinelands was deferred to this State. According to the federal act, natural resources to be protected and preserved included ground and surface water supply and quality; endangered, unique and unusual plants and animals and, in general, the ecological integrity of the Pinelands. Upon state acceptance of responsibility under the act, authority was provided for federal grants for state acquisition of lands and waters within the Pinelands.[1]
In response to the federal legislation the Governor of New Jersey, Brendan T. Byrne, issued Executive Order 71 on February *435 8, 1979. A Pinelands Planning Commission was established to develop a comprehensive management plan according to the requirement of the federal act. In recognition of the danger of continuing uncoordinated housing and other development to the natural resources of the Pinelands, the Executive Order barred state departments and agencies from granting any permit or other approval for development within the Pinelands except upon certification by the Pinelands Planning Commission. An applicant for such certification bore the burden of demonstrating that no substantial impairment to the natural resources of the Pinelands would result. Natural resources were defined as in the federal act. The Executive Order by its terms was to remain in effect until the enactment of state legislation consistent with it, until approval by the Federal Secretary of the Interior of a comprehensive management plan or until expiration of 18 months.
Four and a half months later, the New Jersey Legislature enacted the Pinelands Protection Act, N.J.S.A. 13:18A-1 et seq., effective June 28, 1979, consistent with Executive Order No. 71. That act established the Pinelands Commission and ratified any action taken prior to its effective date "by the planning entity established pursuant to the Federal Act." N.J.S.A. 13:18A-4(c). Prevention of degradation of surface and ground waters and of other threats to the Pinelands environment were set forth among the goals of a comprehensive management plan to be prepared and adopted by the Pinelands Commission. N.J.S.A. 13:18A-9. A specific deadline within 18 months for the preparation and adoption of the plan was set by N.J.S.A. 13:18A-8.
The Pinelands Protection Act imposed a moratorium on the issuance of State, county and municipal permits or other approvals for construction within the Pinelands until adoption of a comprehensive management plan, except upon approval of an application for development by the Pinelands Commission. N.J.S.A. 13:18A-4. The legislative standards governing the Commission's grant of such approval were as follows: extraordinary hardship, compelling public need or consistency with the purposes *436 and provisions of both the federal and state enactments and no resulting substantial impairment of the natural resources of the Pinelands. That moratorium was an interim provision only, until adoption of a comprehensive management plan. Id.
A comprehensive management plan for the Pinelands was adopted by the Pinelands Commission on November 21, 1980, was approved by the Governor on December 1, 1980, and became effective on January 14, 1981.
Under § 9 of the Pinelands Protection Act, N.J.S.A. 13:19A-10, state, county and local permits and other approvals for development within the Pinelands are barred subsequent to the adoption of the comprehensive management plan, unless conforming to its provisions. A waiver from strict compliance with the plan may be granted by the Pinelands Commission, under N.J.S.A. 13:18A-10, in accordance with rules and regulations promulgated by it:
... upon finding that such waiver is necessary to alleviate extraordinary hardship or to satisfy a compelling public need, is consistent with the purposes and provisions of this act and the Federal Act, and would not result in substantial impairment of the resources of the pinelands area;
In 1971 Orleans obtained municipal planning approval for a planned unit development on approximately 393 acres in Evesham Township, Burlington County, two miles inside of the northwest corner of the area designated in the Pinelands Protection Act as the Pinelands protection area, which is outside of and differentiated from the more environmentally sensitive Pinelands preservation area. Orleans's tract is bisected by Barton Run, a tributary of Rancocas Creek which, in turn, flows into the Delaware River. A total of 568 out of the 1,523 planned dwelling units had been built by the effective date of Executive Order 71. Meanwhile, Orleans had been granted approval by the State Department of Environmental Protection (D.E.P.) for a storm drainage and flood water management plan, which included creation of artificial lakes, to serve the entire tract.
As of the effective date of Executive Order 71 Orleans had been granted an exemption by the State Division of Water *437 Resources from the Division's ban on sanitary sewer connections into the Evesham Township treatment facility for sections 2 and 19 of the planned unit development. Such exemption had also been applied for and had been denied in December 1978 for the other sections on which most of the remaining 955 dwelling units were planned, except for a verbal assurance, according to Orleans, that an exemption from the ban would be forthcoming for section 1. No appeal was brought from that denial. Terrace apartments were planned on section 2, a five-acre parcel; town-houses on section 19, a 23.5-acre parcel; and commercial uses on section 1, a five-acre parcel.
The only remaining state agency approval required for sections 2 and 19 and, according to Orleans, for section 1 would have been sewer construction permits pursuant to N.J.S.A. 58:10A-6(b). With the implementation of Executive Order 71 the D.E.P. advised Orleans that it would not consider applications for such permits until the applicant had received the necessary approvals from the Pinelands Planning Commission.
Orleans did not challenge the constitutional validity of the Executive Order of February 8, 1979 in any proceeding until the present appeal. Instead, in March 1979 Orleans applied pursuant to the Executive Order for an exemption from the moratorium on state agency permits and approvals for the remaining 955 dwelling units of its planned unit development. A preliminary, nonevidentiary hearing was held on June 15, 1979 before the Pinelands Development Review Board. The Pinelands Development Review Board consisted of the Deputy Commissioners of the Department of Community Affairs, the Department of Agriculture and the Department of Environmental Protection (D.E.P.). The Review Board had been formed at the request of the Governor to process all applications until such time as the Pinelands Planning Commission was organized.
Orleans's application for an exemption was denied by the Review Board on June 22. The Review Board noted that Orleans had been denied an exemption from the ban on sanitary *438 sewer connections into the Evesham Township facility except for sections 2 and 19; that the seasonal high water table on the entire tract is between ground level and three feet below the surface; that storm waters would discharge directly into Barton Run and that various endangered species had habitats on the premises. It concluded that Orleans's proposed construction would threaten substantial impairment of the natural resources of the Pinelands, advising Orleans of a right to appeal to the Commissioner of D.E.P. for a review of its preliminary decision.
Orleans did so appeal on June 29, 1979, one day following the effective date of the Pinelands Protection Act, which superseded the Executive Order. As a contested matter the Commissioner transferred it for an evidentiary hearing to the Office of Administrative Law, where it was placed on an inactive list. On the appeal before us Orleans does not raise any issue as to the "on hold" status of its administrative appeal from the Pinelands Development Review Board.
Orleans next proceeded pursuant to the Pinelands Protection Act. On June 25, 1979 it applied to the Pinelands Commission for an exemption for sections 1, 2 and 19 of its planned unit development from the interim moratorium on state, county and local permits or other approvals within the Pinelands. An administrative law judge held an evidentiary hearing on four days in April 1980. He recommended the granting of the exemption for sections 1 and 2 and its denial for section 19. The Pinelands Commission on August 25, 1980 rejected the administrative law judge's recommended decision as to sections 1 and 2 and accepted it as to section 19, thus denying Orleans's application in toto.
In its opinion the Pinelands Commission applied interim rules and regulations adopted by it in August 1979 establishing standards for the determination of "substantial impairment" of the resources of the Pinelands. N.J.A.C. 7:1G-1.11. All three sections were found to be freshwater wetlands as defined in the regulations, a finding also reached by the administrative law *439 judge. Standard 9 of the regulations barred exemptions from the moratorium for sites located on or within 300 feet of freshwater wetlands. The Commission denied Orleans's application for all three sections under that standard but without reference to or discussion of the administrative law judge's finding that, because of clearing and disturbance of the natural terrain of sections 1 and 2 and of lowering of the water table there as the result of the newly created upstream detention lakes, "a number of the wetlands functions [of these sections] have already been lost."
The Commission also denied Orleans's application under Standard 2 of the interim rules and regulations because development of all three sections would result in the degradation of existing water quality by stormwater discharges into Barton Run, significantly increasing its pollution load. The Commission specifically rejected the administrative law judge's finding that the entire theoretical capacity of Barton Run to dilute stormwater pollutants could be taken into consideration, irrespective whether any further upstream development took place.
Other standards applicable to the proposed development of section 19, according to both the Commission and the administrative law judge, were the bar against exemption from the moratorium on sites which were within a given distance of a river included in the State's Wild and Scenic River System (Standard 6) and were likely habitats of the Pine Barrens tree frog, an endangered species, and the pine snake, a threatened species (Standard 7).
This appeal from the Commission's decision was instituted on October 10, 1980. Subsequently, as we have noted heretofore, a comprehensive management plan for the Pinelands was adopted by the Pinelands Commission pursuant to N.J.S.A. 13:18A-8, effective January 14, 1981. We are advised by the State that sections 1 and 2 of Orleans's planned unit development are in a Regional Growth Area permitting relatively high density residential *440 development. For example, on section 2 Orleans may be eligible to construct 60 dwelling units on the five-acre tract, amounting to 83 1/3% of the 72 terrace apartments in its plan as approved by Evesham Township. We are also advised by the State that section 19 is in a Rural Development Area permitting some residential development but at lower density.
Orleans has not sought to avail itself of the more favorable provisions of the comprehensive management plan applicable to it, has not applied for a waiver under N.J.S.A. 13:18A-10 and has not moved for a remand of this appeal for review under the plan now in effect.
Orleans raises six issues on appeal: the constitutional validity of Executive Order 71; the constitutional validity of the standards, rules, regulations and procedures of the Pinelands Development Review Board; the constitutional validity of N.J.S.A. 13:18A-14 of the Pinelands Protection Act and of the interim rules, regulations and standards promulgated pursuant to that section by the Pinelands Commission; whether its application to the Review Board was wrongfully denied; whether its application to the Pinelands Commission was wrongfully denied, and its right to compensation for being invalidly deprived of the use of its property as the result of the Executive Order during the period from its issuance on February 8, 1979 until June 28, 1979, the effective date of the Pinelands Protection Act, and as the result of the Pinelands Protection Act during the period from June 28, 1979 until January 14, 1981, the effective date of the comprehensive management plan for the Pinelands.
Orleans's challenges to the constitutional validity of Executive Order 71 and of the standards, rules, regulations and procedures adopted to implement it are now moot, except for its claim of an unlawful taking of its property based on 4 1/2 months' delay in the opportunity to develop its property. New Jersey Builders Ass'n v. Byrne, 80 N.J. 469 (1979), held that a challenge to the *441 constitutional validity of Executive Order 71 was moot, no claim of a right to inverse condemnation being there asserted.
Orleans also argues that it was deprived of due process of law because it was not afforded an evidentiary hearing before the Pinelands Development Review Board. That argument is without merit. An evidentiary hearing was available to it on administrative appeal from the Review Board to the Commissioner of D.E.P.
The Review Board's denial of Orleans's application for an exemption from the moratorium for the remaining 955 dwelling units of its planned unit development was not final administrative action; an administrative appeal by Orleans is pending and Orleans's failure to exhaust its administrative remedy is a bar to its appeal on this issue. Atlantic City v. Laezza, 80 N.J. 255, 265 (1979); Paterson Redevelopment Agency v. Schulman, 78 N.J. 378, 386-388 (1979); Frapaul Constr. Co. v. Transportation Dep't, 175 N.J. Super. 84 (App.Div. 1980).
Final administrative action denying Orleans's application for an exemption from the moratorium for sections 1, 2 and 19 was taken by the Pinelands Commission pursuant to N.J.S.A. 13:18A-14 and its interim rules, regulations and standards. In its constitutional attack on that section and the interim rules, regulations and standards Orleans argues that the legislative standard of "substantial impairment of the resources of the Pinelands" is not sufficiently definite and, hence, is inadequate to delegate legislative authority to the Commission, and that the interim rules, regulations and standards defining "substantial impairment," which were adopted by the Commission, were void for vagueness because of the lack of definiteness of the legislative standard guiding the Commission.[2]
*442 We disagree. The resources to be protected from "substantial impairment" are set forth in the declaration of legislative policy in N.J.S.A. 13:18A-2 and in the goals of the comprehensive management plan in N.J.S.A. 13:18A-9. A legislative standard governing an administrative agency in the implementation of declared legislative purposes and policies may be expressed in broad, general terms rather than in specific detail. Shelton College v. State Bd. of Ed., 48 N.J. 501, 516-518 (1967); Ward v. Scott, 11 N.J. 117, 123 (1952); Toms River Affiliates v. Environmental Protection Dep't, 140 N.J. Super. 135, 144 (App.Div. 1976), certif. den. 71 N.J. 345 (1976). In this State zoning variances may not be granted under N.J.S.A. 40:55D-70 (formerly N.J.S.A. 40:55-39) unless they "will not substantially impair the intent and purpose of the zone plan and zoning ordinances"  a legislative standard which has been enforced as reasonably definite within general understanding. See Leimann v. Cranford Tp., Bd. of Adj., 9 N.J. 336, 340-341 (1952).
In determining whether an exemption from the moratorium under N.J.S.A. 13:18A-14 would result in substantial impairment of the resources of the Pinelands, the Pinelands Commission is not vested with unbridled or arbitrary power by the Legislature. Rather, the Commission's delegated authority, in effectuating the legislative purpose of protecting the legislatively identified resources of the Pinelands, is to apply the standard of "substantial impairment," which is of sufficient definiteness to withstand constitutional attack. We uphold the constitutionality of N.J.S.A. 13:18A-14 and of the interim rules, regulations and standards adopted by the Commission.
We must next deal with the issue of the Pinelands Commission's denial of Orleans's application for an exemption from the moratorium. It was stipulated before the Commission that, without exemption, Orleans suffered extraordinary hardship. The issue was whether Orleans's proposed development of sections 1, 2 and 19 would substantially impair the natural resources of the Pinelands. The Commission concluded that Orleans *443 had failed to establish the negative: that its proposed development in an environmentally sensitive area would not substantially impair the natural resources of the Pinelands. We agree with that conclusion.
The factual findings supporting the Commission's conclusion that the exemption, if granted, would substantially impair the resources of the Pinelands were as follows. The three sections for which the exemption was sought, sections 1, 2 and 19 of Orleans's proposed planned unit development, are freshwater wetlands. Stormwater discharges from all three sections would add raw pollutants, nitrogen, phosphorus and suspended solids in dangerous loads into Barton Run, increase the biochemical oxygen demand in the stream endangering fish and plant life, and degrade its water quality. Section 19 is in large part natural woodland and a likely habitat of endangered species.
The Commission rejected, in our view properly, the administrative law judge's finding that pollution from Orleans's property would not be injurious to Barton Run because of the dilutant effect of the entire theoretical upstream capacity. No presumption that the upstream watershed will remain undeveloped is warranted.
Although not set out in the Commission's decision, the rationale for protection of freshwater wetlands as a natural resource was made clear in expert testimony before the administrative law judge. Freshwater wetlands serve significant functions in flood control, in purifying water and in providing a habitat for endangered animals, trees and plants.
Orleans contends on this appeal that its proposed project would not frustrate the legislative goals and that the legislative standard of "substantial impairment of the resources of the Pinelands" was arbitrarily applied to three sections of its property, only 33.5 acres in area, because any impairment or degradation of natural resources in that limited area would have a *444 minute adverse effect on the entire resources of the Pinelands. This argument must be rejected. If exemptions should be granted because development on individual tracts would impair only minutely the entire resources of the Pinelands, the cumulative effect of such exemptions would defeat the legislative goals of the Pinelands Protection Act. Cf. Lom-Ran v. Environmental Protection Dep't, 163 N.J. Super. 376, 388 (App.Div. 1978), rejecting a parallel argument that denial of an exemption was unjustified in view of its infinitesimal impact. The Pinelands Commission conformed with the legislative intent, in our view, in applying the standard of "substantial impairment" to significant resources of the Pinelands located on the three sections of Orleans's property for which the exemption from the moratorium was sought. The test is not whether development on 33.5 acres would constitute a "substantial impairment" of the entire resources of the approximately one million acres within the Pinelands National Reserve.
Upon review of the record below we conclude that the Commission's findings of significant threats of degradation of the water quality of Barton Run, of destruction of valuable wetlands and a natural woodland environment on section 19 and of peril to endangered species on section 19 were reasonably reached on sufficient credible evidence in the record. See Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). We question the Commission's finding of a significant threat of destruction of valuable wetlands on sections 1 and 2 in the absence of any apparent consideration by the Commission of two factors relied on by the administrative law judge in recommending the granting of the exemption for these two sections: the extensive bulldozer activity, which had disturbed the natural terrain, and the lowering of the water table as the result of the newly created upstream detention lakes. These conditions may have already diminished significantly the wetlands functions of sections 1 and 2.
*445 Since the administrative decision on appeal before us the law applicable to Orleans's property has been changed with the adoption of the comprehensive management plan. As stated in N.J.S.A. 13:18A-10(c):
Subsequent to the adoption of the comprehensive management plan, the provisions of any other law, ordinance, rule or regulation to the contrary notwithstanding, no application for development within the pinelands area shall be approved by any municipality, county or agency thereof, and no State approval, certificate, license, consent, permit, or financial assistance for the construction of any structure or the disturbance of any land within such area shall be granted, unless such approval or grant conforms to the provisions of such comprehensive management plan.
The comprehensive management plan should govern Orleans's right to further development on its entire parcel, including sections 1, 2 and 19. As we have noted, its provisions appear more favorable to Orleans than the provisions restricting development in N.J.S.A. 13:18A-14 and the interim rules, regulations and standards.
The Supreme Court in Kruvant v. Cedar Grove, 82 N.J. 435, 440 (1980), reaffirmed the established principle that an appellate court on direct review should apply the legislation in effect at the time of its decision, as follows:
The purpose of the principle is to effectuate the current policy declared by the legislative body  a policy which presumably is in the public interest. By applying the presently effective statute, a court does not undercut the legislative intent. Moreover, when a facial attack on a statute is involved, or an injunction is sought against future violations of a statute, the time of decision rule is necessary to avoid rendering an advisory opinion on a moot question.
The time of decision rule requires the dismissal of the appeal from the Pinelands Commission because there is no record before us as to the effect of the comprehensive management plan on Orleans's property or of Orleans's right to a waiver under N.J.S.A. 13:18A-10 from strict compliance with the plan. Orleans may elect to develop its property in accordance with the comprehensive management plan or to apply for a waiver under N.J.S.A. 13:18A-10. Our dismissal of this appeal is without prejudice to such rights.
*446 The final issue is that of unlawful taking of Orleans's property and its right to compensation for approximately two years's delay in its development, on a theory of inverse condemnation.
Jurisdiction in inverse condemnation proceedings should be in the Law Division of this court where a factual record can be developed. In Re Jersey Central Power and Light Co., 166 N.J. Super. 540 (App.Div. 1979); Pfleger v. Highway Dep't, 104 N.J. Super. 289 (App.Div. 1969). Nevertheless, on this appeal several applicable legal principles should be stated which pose various impediments to Orleans's claim to a right of inverse condemnation.
Orleans's initial contention is that it had a vested right to develop its entire tract in accordance with municipal planning approval of its planned unit development and D.E.P. approval of its storm drainage and flood water management plan. That contention is groundless. See Ocean Acres, Inc. v. State, 168 N.J. Super. 597 (App.Div. 1979), certif. den. 81 N.J. 352 (1979), holding that later adopted, more stringent D.E.P. standards for septic system approvals in a "critical area" must be complied with, despite municipal planning approval and substantial expenditures in reliance. As in Ocean Acres, the proposed development of Orleans's property is subject to upgraded state regulatory standards imposed subsequent to municipal planning approval.
Under general principles a property owner is barred from any claim to a right of inverse condemnation unless deprived of all or substantially all of the beneficial use of the totality of his property as the result of excessive police power regulation. Penn Central Transp. Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978); AMG Associates v. Springfield Tp., 65 N.J. 101 (1974); In Re Loveladies Harbor, Inc., 176 N.J. Super. 69 (App.Div. 1980), certif. den. 85 N.J. 501 (1981); *447 American Dredging Co. v. State, 169 N.J. Super. 18 (App.Div. 1979).
Orleans was not deprived of the beneficial use of its entire remaining undeveloped property as the result of Executive Order No. 71 or of the Pinelands Protection Act and the interim rules, regulations and standards. Rather, the proposed development of the sections other than sections 1, 2 and 19 was blocked by the Division of Water Resources ban on sanitary sewer connections into the Evesham Township treatment facility. The Division of Water Resources had denied Orleans's application for an exemption from that ban, other than for sections 2 and 19 and, according to Orleans, for section 1, only a few weeks preceding the Governor's proclamation of the Executive Order.
As for sections 2, 19 and, possibly 1, the effect of the intervening Executive Order and Pinelands Protection Act was to make Orleans ineligible for the sewer construction permits prerequisite to further development, without an exemption from the moratorium. Orleans could not have immediately developed its remaining tract if the Executive Order had not been issued and the Pinelands Protection Act had not been enacted. Whether sewer construction permits would have been forthcoming is speculative.
The restrictions on Orleans's development of sections 1, 2 and 19 under the Executive Order and the Pinelands Protection Act were predominantly to prevent public danger or harm: degradation of water resources and floods. Orleans's application for an exemption was denied under standards protecting against threats to the public interest. Cf. Usdin v. Environmental Protection Dep't, 173 N.J. Super. 311 (Law Div. 1980), aff'd 179 N.J. Super. 113 (App.Div. 1981). Lomarch Corp. v. Englewood, 51 N.J. 108 (1968), which holds that a landowner is entitled to compensation when its property is reserved for a year for *448 possible future use as a park or playground, is distinguishable; the restriction on the development of the property was for the purpose of creating a public benefit and not of preventing public danger or harm.
Moreover, under decisional law in this State as well as in other jurisdictions, building moratoria or other "freezes" on the development of land are noncompensable where their purpose is to curb piecemeal development except for administratively approved exemptions, during a limited period of study and planning leading to formulation of a comprehensive system for the area's development which would safeguard its environment. Toms River Affiliates v. Environmental Protection Dep't, 140 N.J. Super. 135 (App.Div. 1976), certif. den. 71 N.J. 345 (1976); Meadowlands Reg., &c, v. Hackensack, &c, 119 N.J. Super. 572 (App.Div. 1972), certif. den. 62 N.J. 72 (1972); State v. Superior Court of Orange Cty., 12 Cal.3d 237, 116 Cal. Rptr. 497, 524 P.2d 1281 (Sup.Ct. in bank 1974); Russo v. N.Y. Environmental Conserva. Dep't, 55 App.Div.2d 935, 391 N.Y.S.2d 11 (1977); N.Y.C. Housing Auth. v. Environmental Cons. Comm'n, 83 Misc.2d 89, 372 N.Y.S.2d 146 (Sup.Ct. 1975); see, also, Golden v. Ramapo Planning Bd., 30 N.Y.2d 359, 334 N.Y.S.2d 138, 285 N.E.2d 291 (Ct.App. 1972).
The Governor's proclamation did not restrict development in the Pinelands pursuant to local permits and other approvals. It prohibited the issuance of permits and other approvals only by agencies subject to the Governor's authority within the Executive Branch of State Government, pending enactment of state legislation regulating development in the Pinelands in accordance with the federal act establishing the Pinelands National Reserve. The interim moratorium under the Pinelands Protection Act was likewise of limited duration until adoption of the comprehensive management plan.
In accordance herewith we dismiss this appeal on all issues.
NOTES
[1] The Legislature in 1971 in N.J.S.A. 13:18-1 et seq. had constituted a Pinelands Environmental Council with limited powers to stay projects adverse to the Pinelands environment and ecology and to report findings and to recommend disapprovals to other agencies with review jurisdiction.
[2] As noted above, the same legislative standard governs Pinelands Commission determination of applications for waivers from the comprehensive management plan which was adopted effective January 14, 1981. N.J.S.A. 13:18A-10.