177 N.J. Super. 626 (1981)
427 A.2d 608
BILL MATHESIUS, MERCER COUNTY EXECUTIVE, PLAINTIFF-RESPONDENT,
v.
MERCER COUNTY IMPROVEMENT AUTHORITY, A BODY POLITIC, THE MERCER COUNTY BOARD OF CHOSEN FREEHOLDERS, CALVIN A. TAYLOR, FRANK NAPOLEON, SHIRLEY K. TURNER, RICHARD M. MAIORINO AND MARION CONNELL, DEFENDANTS-APPELLANTS, AND ALBERT M. STARK, KENNETH L. BURKHEAD, JASON L. SEALE, FREEHOLDER ALBERT E. DRIVER, FREEHOLDER EUGENE V. HOWARD AND WALTER WENCZEL, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1981.
Decided February 25, 1981.
*629 Before Judges MATTHEWS, MORTON I. GREENBERG and ASHBEY.
William J. Walsh argued the cause for defendants-appellants Mercer County Improvement Authority, a body politic, Calvin A. Taylor, Frank Napoleon, Shirley K. Turner, Richard M. Maiorino and Marion Connell (Frank V. Walsh, Jr., attorney).
William L. Boyan argued the cause for defendant-appellant Mercer County Board of Chosen Freeholders.
Barry D. Szaferman argued the cause for plaintiff-respondent (Paul T. Koenig, Jr., Mercer County Counsel, attorney).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
*630 Plaintiff, the county executive of Mercer County, brought this action in lieu of a prerogative writ in the Superior Court, Law Division, on March 6, 1980. Named as defendants were the Mercer County Improvement Authority, the Mercer County Board of Freeholders, the individual members of the Authority, Richard Maiorino, the executive director of the Authority, and Marion Connell, the executive secretary-administrative officer of the Authority. Plaintiff alleged that the Authority membership had been expanded by the freeholders from five to nine members, that two freeholders had been appointed to the Authority and that the Authority had proposed to enter into five-year employment contracts with Maiorino and Connell. Plaintiff asserted that all of these acts were unlawful. He sought judgment declaring the county administrative code provision providing for expansion of the authority to be unlawful, removal of the nine members of the Authority and an injunction prohibiting the Authority from entering into the proposed contracts with Maiorino and Connell.
Defendants, other than the freeholders, filed a joint answer on March 26, 1980. They denied that any of their actions were unlawful. They also set forth various affirmative defenses, which included procedural objections. The record does not reveal whether a formal answer was filed on behalf of the freeholders. A hearing on the matter was held on April 21, 1980 at which all parties were represented by counsel. The court did not take testimony because the issues were essentially legal rather than factual. The court did hear extensive oral argument from counsel and affidavits were submitted. At the conclusion of the hearing the judge overruled defendants' procedural objections. On July 11, 1980 the judge issued a written opinion on the substantive issues. He found that the Authority had been unlawfully expanded from five to nine members and that the contracts with Maiorino and Connell, which were entered into after the action had been started, were unlawful. Accordingly, he ordered that the Authority be reconstituted *631 with five members. The employment contracts were invalidated. A final judgment was entered on July 22, 1980.
Three separate appeals have been taken from the judgment. The two employees and several members of the nine-member authority filed one appeal. Separate appeals were filed by the board of freeholders and the Authority itself. The appeals of the employees, members of the Authority and the freeholders were consolidated by our order of September 19, 1980. The appeal by the authority was placed on an inactive status by our order of November 21, 1980 pending disposition of the first two appeals.[1]
The factual background to this case is not complicated. Mercer County has a county executive form of government under the Optional County Charter Law. See N.J.S.A. 40:41A-37; Mercer Cty. Community College Trustees v. Sypek, 160 N.J. Super. 452 (App.Div.), certif. den. 78 N.J. 327 (1978). It had, at the time of the adoption of this form of government, a county improvement authority which still continues in existence. See N.J.S.A. 40:37A-44 et seq. This authority originally consisted of five members appointed by the freeholders. See N.J.S.A. 40:37A-48. Each appointment was for five years with one term expiring annually. Since the adoption of the county executive form of government, the executive has appointed the members of the authority. N.J.S.A. 40:41A-37(b). Upon adoption of the county executive government the county passed an administrative code in May 1976. This code included the following provision with respect to the improvement authority (section 9.7):

*632 (a) Membership: The Improvement Authority shall consist of nine residents of the County, including two Freeholders.
The seven citizen members shall serve for three years each from May 1 and until the appointment and qualification of their successors. The first appointments made under this section shall designate three persons to serve for one year each, two to serve for two years and two to serve for three years. Initial members shall serve from the time of their appointment, but the term of office shall be deemed to commence on May 1.
The two Freeholders shall be appointed to one-year terms and take office in January of each year.
(b) Vacancies: Any vacancy shall be filled in the manner of the original appointment for the remainder of the unexpired term.
(c) Organization and Quorum: Within ten days after the first appointment and thereafter during the month of June, the authority shall elect a chairperson and a vice-chairperson.
The powers of the authority shall be bested [sic] in the members in office from time to time, with five members constituting a quorum.
Appointments to the Authority were made in accordance with the code and thus when the events giving rise to this litigation took place two freeholders were members of the Authority. In January 1980 plaintiff became the county executive. A meeting of the Authority at which plaintiff appeared was held on February 28, 1980. He indicated that he had read an editorial in the Trenton Times concerning the reappointment of the executive director of the Authority. He stated that he opposed a long term for the director and favored a one-year term. After discussion among the members of the Authority, resolutions were adopted providing for five-year contracts to be entered into with defendants Maiorino and Connell. Plaintiff then brought this action on March 6, 1980. The contracts were executed on March 27, 1980.
In invalidating § 9.7 of the administrative code, the trial judge reasoned that the Optional County Charter Law did not permit an expansion of the membership of the Authority. The judge felt that the Legislature had intended the Authority to be independent of the county government and not subordinate to it, and that this relationship had not been altered by the adoption of the county executive plan. He stated that the Authority was itself a "political subdivision" of the State. See N.J.S.A. *633 40:37A-55. He thus distinguished cases such as Union Cty. Park Comm'n v. Union Cty., 154 N.J. Super. 213 (Law Div. 1976), aff'd o.b. 154 N.J. Super. 125 (App.Div.), certif. den. 75 N.J. 531 (1977) and American Fed. of State, Cty. and Mun. Employees v. Hudson Cty. Welfare Bd., 141 N.J. Super. 25 (Ch.Div. 1976), which did allow the freeholders to reorganize or abolish other agencies of the county. The judge reasoned that those agencies were not political subdivisions of the State and that their powers did not approach those of a county improvement authority.
We deal first with the procedural objections that defendants have raised in this action.[2] They assert that the action was untimely under R. 4:69-6; that if the authority should be regarded as a state agency, this action should have originally been brought in the Appellate Division pursuant to R. 2:2-3; that plaintiff lacks standing to challenge the contracts and that plaintiff is estopped from bringing this action.
These objections are without merit. R. 4:69-6(a) provides, with exceptions not germane in this case, that an action in lieu of prerogative writs must be commenced not later than 45 days after the accrual of the right to review, hearing or relief. Unquestionably, the right to review the county administrative code provisions and the appointment of the members had existed more than 45 days before this action was brought. Nevertheless we find it inconceivable that this court could permit an unlawfully constituted public body to function indefinitely simply because its existence could have been challenged earlier. If we rejected this action as untimely, we would be perpetuating an illegal body. Thus, we regard the unlawful holding of office by the members of the Authority in these circumstances as an *634 ongoing wrong.[3]See Jones v. McDonald, 33 N.J. 132, 138 (1960). Further, even if we deemed the action to have been brought beyond the 45 days ordinarily allowed by R. 4:96-6, it was appropriately entertained because it is obvious that the interest of justice required that the court hear this important public matter. R. 4:69-6(c). See Brunetti v. New Milford, 68 N.J. 576, 586-587 (1975).
Defendants Maiorino and Connell contend that plaintiff's position is that the Authority is a state agency and is thus not subject to reorganization by the freeholders. Maiorino and Connell reason from this that the resolutions providing for their employment could only be challenged directly in this court since the challenge would be an appeal from a state agency. See R. 2:2-3(a)(2). We find it unnecessary to characterize the authority either as a state or county agency. The Authority has been established to function within Mercer County. Actions in lieu of prerogative writs against state agencies with only local jurisdiction may be brought in the Law Division. See Baldwin Construction Co. v. Essex Cty. Bd. of Tax., 27 N.J. Super. 240, 242 (App.Div.), supplemented after reargument 28 N.J. Super. 110 (App.Div. 1953), aff'd 16 N.J. 329 (1954).
We note that even if we held that the trial court did not have jurisdiction, we would decide this appeal on the merits and enter an appropriate judgment here. R. 1:13-4(b). The alleged jurisdictional deficiency in the Law Division related to the power of that division to hear the case and thus went to the subject matter of the action. See Abbott v. Beth Israel Cemetery Ass'n, 13 N.J. 528, 537 (1953).[4] Thus, an order vacating the judgment would be unwarranted since we already have a sufficient record to decide this matter.
*635 Defendants Maiorino and Connell contend that plaintiff lacks standing to bring this action. We disagree. Plaintiff is empowered to appoint the members of the Authority. N.J.S.A. 40:41A-37(b). It is clear that in his capacity as county executive he has an interest in its operations sufficient to give him standing. See Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107-108 (1971).
Defendants assert that plaintiff is estopped from challenging the membership of the Authority since both plaintiff and his predecessor appointed its members. We think, however, that plaintiff not only is not estopped from bringing the action but indeed as the county executive should have brought the suit. Estoppel is not applied against public entities to the extent that it may be asserted against a private litigant. Summer Cottager's Ass'n v. City of Cape May, 19 N.J. 493, 503 (1955). Plaintiff did not bring this suit as a private person. Rather he acted as the county executive. Under N.J.S.A. 40:41A-36(c), as the county executive, he is obliged to "enforce the county charter, the county's laws and all general laws applicable thereto." Further, he has the power to appoint the members of the Authority. N.J.S.A. 40:41A-37(b). We could hardly estop him from challenging its unlawful constitution and thus require that he continue to make unlawful appointments.
Since there is no procedural bar to this action we reach the merits of the controversy. It is clear that the provisions of the county charter providing for expansion of the Authority to nine members, two of whom must be freeholders, is invalid. In Hollander v. Watson, 167 N.J. Super. 588 (Ch.Div. 1979), aff'd o.b. 173 N.J. Super. 300 (App.Div. 1980) we affirmed a Chancery Division judgment holding that a member of the board of freeholders of Mercer County could not be appointed to the board of trustees of Mercer County Community College. The trial judge indicated that "offices are not compatible when one is subordinate to or subject to the supervision or control of the other or the duties of the offices clash requiring the officer to prefer one *636 obligation over the other." 167 N.J. Super. at 592. The trial judge found the offices to be incompatible because of the ongoing relationship between the freeholders and the college, subordinating the college to the freeholders in some respects.
An analysis similar to that made in Hollander v. Watson leads us to the same result. The freeholders, notwithstanding the adoption of the executive form of government, retain their legislative powers. See Hollander v. Watson, supra, 167 N.J. Super. at 593. These legislative powers include the important policy and monetary decisions affecting the Authority, as specified in N.J.S.A. 40:37A-56(1); N.J.S.A. 40:37A-76; N.J.S.A. 40:37A-77; N.J.S.A. 40:37A-78; N.J.S.A. 40:37A-79 and N.J.S.A. 40:37A-80. Since the Authority is in these respects subject to the supervision and control of the freeholders, the offices of freeholder and authority membership are incompatible.
In Hollander v. Watson the finding of incompatibility did not lead to the invalidation of any portion of the county administrative code because nothing in the code required that a freeholder be appointed to the board of trustees of the college. The appointment was made as a matter of discretion by the executive. Thus, the freeholder was given the option to occupy either one of the offices. 167 N.J.Super at 591. The situation before us is quite different. The county administrative code compels the appointment of two freeholders. Thus, the provisions of § 9.7 of the code are invalid, at least insofar as they require that two freeholders serve on the board of the authority.[5]
Defendants suggest that we sever the invalid portions of the code by deleting the requirement that two of the members of the expanded nine-member Authority be freeholders. There *637 are two reasons that persuade us not to do so. First, there is no clear indication that the freeholders would have intended the Authority to be expanded if freeholders were not to be included. See Inganamort v. Fort Lee, 72 N.J. 412, 422-423 (1977).
A second reason why we cannot sever § 9.7 is that it would render the remaining portions fatally incomplete since they cannot stand by themselves. We would be forced to rewrite the provision, which we may not do. See Inganamort v. Fort Lee, supra at 423. The code provides for the authority to consist "of nine residents of the county, including two freeholders." We could conceivably delete the provisions that two members be freeholders. That would leave nine residents. The code thereafter provides that "the seven citizen members shall serve for three years ..." and the two freeholders shall serve for one year. If we simply deleted the requirement that two members be freeholders, we would have to somehow make provision for the term of the two new members. To do that we could amend the code to provide that "the nine citizen members shall serve for three years...." Alternatively, we could provide that seven citizen members continue to serve for three-year terms and that two get one-year terms. Additionally, we could reduce the Authority to seven residents serving three-year terms. We cannot, however, do any of these things without usurping the freeholders' functions. See Affiliated Distillers Brands Corp. v. Sills, 60 N.J. 342, 346 (1972). We think that if the board is to be expanded, the freeholders should provide for the changes.[6]
Defendants have brought to our attention the fact that the Legislature has considered and passed Senate Bill 1429 (1980). That bill, if finally adopted will, among other things, amend N.J.S.A. 40:41A-30 to provide that all county authorities shall be considered county agencies for the purpose of that section. The section provides that county agencies may be altered or *638 abolished by the county. The statement attached to the bill thus indicates that it would "reverse the recent Superior Court decision with respect to the reorganization of the Mercer County Improvement Authority." That decision is the trial court determination in this case. The bill was conditionally vetoed by the Governor on February 9, 1981 for reasons not related to this case. See N.J. Const. (1947), Art. V, § I, par. 14. Accordingly, if the bill is again passed by the Legislature to meet the Governor's objections and he then approves the bill, the rationale of the decision by the trial court will be undermined. But notwithstanding the broad statement attached to the bill, that it will "reverse" the decision of the trial court, it cannot have that consequence. We are affirming the decision of the trial court on the basis of the incompatibility of the offices of authority member and freeholder. Nothing in the bill permits a freeholder to occupy incompatible offices.
The final issue for our determination is what effect the invalidation of the Authority, as constituted under the county code, has on the Maiorino and Connell contracts. We do not find the question difficult. Undoubtedly the bulk of the actions of the ousted Authority members, if challenged, will be sustained as the valid good faith acts of de facto officers. See Switz v. Middletown Tp., 40 N.J. Super. 217, 236-237 (App.Div. 1956), mod. on other grounds 23 N.J. 580 (1957). Thus, our decision does not compel the new members of the Authority to repudiate any other actions by the ousted members. But the situation with respect to the Maiorino and Connell contracts is different. These contracts were authorized on February 28, 1980. This action was started on March 6, 1980. The Authority had a meeting on March 27, 1980. The minutes show that the Authority retained counsel to defend this action and then reviewed and approved the employment contracts which were executed thereafter. Thus the Authority entered into five-year contracts with its executive secretary-administrative officer and its executive director with full knowledge of the challenge to the offices of its members. There can also be no doubt that Maiorino and Connell *639 knew of this action when they signed the contracts. Further, Hollander v. Watson, supra, had been decided on April 11, 1979 in the Chancery Division. We think it likely that this reported decision, involving an appointment of a freeholder in Mercer County, was known to at least some of the members of the Authority, one of whose members was an attorney. In any event, the most cursory research would have uncovered it. Thus, in the face of this serious challenge to offices of the Authority, they attempted to secure these two important administrative offices for their own nominees for five additional years. This cannot be permitted.[7]
The final judgment of July 22, 1980 is affirmed.
NOTES
[1] The procedural history with respect to implementation of the decision is as follows. The final judgment of the Law Division was entered on July 22, 1980. A stay was denied by the Law Division on that day. A stay was granted by the Appellate Division on July 24, 1980 but was vacated by the Supreme Court on August 7, 1980. Applications for stays were again made to the Law Division, Appellate Division and the Supreme Court and denied respectively on August 12, August 14 and October 6, 1980. Consequently, the Authority, as it now exists, has been appointed by plaintiff, pursuant to N.J.S.A. 40:37A-48 and N.J.S.A. 40:41A-37(b). The Authority does not challenge its own existence.
[2] The board of freeholders does not join in these objections. Rather, it urges that we adjudicate on the merits that the membership of the Authority may be enlarged by the county. It does not now urge that freeholders may serve on the Authority.
[3] We do not imply that every defect in the appointment of a public officer may be challenged at any time. We are only ruling on the facts before us.
[4] Obviously there was personal jurisdiction over all defendants since they answered or participated. See Drobney v. Drobney, 146 N.J. Super. 317, 322 (App.Div. 1977).
[5] We are, of course, aware that the County Improvement Authorities Law provides that no member of the county governing body may be a member of the Authority. N.J.S.A. 40:37A-52. In view of our decision we need to determine whether this provision survives enactment of the Optional County Charter Law or what effect Senate Bill 1429 (1980), discussed infra, if adopted, will have on this section.
[6] The power of the freeholders to reconstitute the Authority is possibly dependent on the passage of Senate Bill 1429 (1980), discussed infra.
[7] We question whether even absent the challenge to the status of the members of the Authority a contract for these officials beyond one year would have been lawful. N.J.S.A. 40:37A-49 contemplates an annual reorganization of the authority. The county administrative code did not attempt to modify this requirement. N.J.S.A. 40:37A-49 authorizes every authority to appoint a secretary and executive director. This provision may well be interpreted to limit appointments to the one-year terms. See Talty v. Hoboken Bd. of Ed., 10 N.J. 69 (1952). But we do not reach the point.