866 A.2d 1018

JOSEPH SELOBYT (# 434024), PETITIONER–APPELLANT, v. KEOUGH–DWYER CORRECTIONAL FACILITY OF SUSSEX COUNTY, (IMPROPERLY DESIGNATED AS NJ DEPARTMENT OF CORRECTIONS), RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted December 7, 2004—Decided February 10, 2005.

Before Judges KESTIN, LEFELT and ALLEY.

Appellant, *Joseph Selobyt,* submitted a pro se brief.

*McConnell, Lenard & Griggs,* County Counsel, attorneys for respondent (*Dennis J. Lenard,* on the brief).

The opinion of the court was delivered by

LEFELT, J.A.D.

While confined in Sussex County's Keough–Dwyer Correctional Facility, Joseph Selobyt, a State prisoner, received a ten-day disciplinary detention for possessing and using a non-prescribed intoxicant, *N.J.A.C.* 10A:4–4.1 (.203, .204), and being in an unauthorized area *N.J.A.C.* 10A:4–4.1 (.402). After the Facility's warden denied Selobyt's internal appeal, he appealed the disciplinary decision directly to the Appellate Division.

Before us, Selobyt argues for reversal of his disciplinary sanction because the County Facility failed to adhere to the Commissioner of the Department of Corrections' regulations dealing with the taking, custody, and control of urine samples, *N.J.A.C.* 10A:3–

5.10 and 5.11, and because the Facility imposed discipline without sufficient evidence of Selobyt's misconduct.[1] We decline to consider these issues because Selobyt's appeal should have been filed in the Law Division as an action in lieu of prerogative writs.[2] Consequently, we transfer the matter to the Law Division and dismiss Selobyt's appeal to us.

Here are the basic jurisdictional principles governing judicial review of agency decisions. The 1947 New Jersey Constitution superseded prerogative writs jurisdiction, which had been the primary mechanism for review of agency actions, "and, in lieu thereof," afforded "review, hearing and relief ... in the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right...." *N.J. Const.* art VI, § 5, ¶ 4. In accordance with this constitutional provision, the Supreme Court promulgated a rule that allocates appeals, as of right, to the Appellate Division only "to review final decisions or actions of any state administrative agency or officer,[3] and to review the validity

---

[1] Specifically, Selobyt claims that the correctional facility had him provide a urine sample in a "Dixie," or plastic, cup instead of voiding directly into the "Testcup" as required by the Commissioner's regulations and the test manufacturer's protocol. Also, Selobyt claims there was insufficient evidence of cocaine use because, according to him, the facility's urine test was faulty and the State testing was not completed until after his administrative hearing. Without a separate point heading, Selobyt also argues that his detention was continued for thirty-seven days beyond the ten-day sanction, which according to Selobyt sent a clear statement to him: "TO HELL WITH YOUR RIGHTS."

[2] Although the parties did not raise the jurisdictional issue initially, upon our request the issue was briefed by all parties.

[3] *R.* 2:2–3(b) also permits appeals to the Appellate Division by leave granted, "in extraordinary cases and in the interest of justice, ... from actions or decisions of an administrative agency or officer if the matter is appealable or reviewable as of right in a trial division of the Superior Court, as where the jurisdiction of the court, agency or officer is questioned on substantial grounds." Under this provision, the Appellate Division may review actions of local administrative agencies in extraordinary circumstances, usually where expedition is in the public interest. This provision is rarely used and would appear not to apply to most county correctional facility inmate discipline actions.

of any rule promulgated by such agency or officer...." *R.* 2:2–3(a)(2).

The general rule is that "every proceeding to review the action or inaction of a *state* administrative agency would be by appeal to the Appellate Division." *Cent. R.R. Co. of N.J. v. Neeld,* 26 *N.J.* 172, 185, 139 *A.*2d 110, 117 *cert. denied,* 357 *U.S.* 928, 78 *S.Ct.* 1373, 2 *L.Ed.*2d 1371 (1958). However, "every proceeding to review the action or inaction of a local administrative agency would be by complaint in the Law Division...." *Id.* at 184–85, 139 *A.*2d at 117.

"Only two exceptions to this [division of authority between the Appellate Division and the Law Division] have been judicially recognized." *Pascucci v. Vagott,* 71 *N.J.* 40, 52 n. 2, 362 *A.*2d 566, 573 n. 2 (1976) (citing *Pfleger v. State Highway Dep't,* 104 *N.J.Super.* 289, 291–93, 250 *A.*2d 16, 17–18 (App.Div.1968) (requiring appeal to Law Division when a record must be developed), and *Baldwin Constr. Co. v. Essex County Bd. of Taxation,* 27 *N.J.Super.* 240, 242, 99 *A.*2d 214, 215 (App.Div.1953), *certif. granted,* 14 *N.J.* 494, 103 *A.*2d 182 (1954), *aff'd,* 16 *N.J.* 329, 108 *A.*2d 598 (1954) (requiring appeal to Law Division when agency's authority is confined to single locality)). *See Montclair Township v. Hughey,* 222 *N.J.Super.* 441, 446, 537 *A.*2d 692, 694–95 (App.Div.1987) (explaining the two exceptions to the normal division of responsibility between the Law Division and Appellate Division).

With these basic principles in mind, we address the County Facility's two arguments for retaining Selobyt's appeal in the Appellate Division. First, the Facility argues that because Selobyt does not seek review of a "mandated ministerial obligation," his appeal is not cognizable as an action in lieu of prerogative writs. The County Facility cites *Cohen v. Board of Trustees of the University of Medicine and Dentistry of New Jersey,* 240 *N.J.Super.* 188, 199–200, 572 *A.*2d 1191, 1196–97 (Ch.Div.1989), as support for this argument that *R.* 4:69–1 applies only "to causes that would previously have been prosecuted under the former writ of mandamus."

*Rule* 4:69–1, actions in lieu of prerogative writs, however, is not limited to disputes involving the writ of *mandamus. Rule* 4:69–1 incorporates the four common civil action prerogative writs that were available in the pre–1947 Supreme Court: *certiorari, quo warranto, prohibition,* and *mandamus. Alexander's Dep't Stores of N.J., Inc. v. Borough of Paramus,* 125 *N.J.* 100, 107, 592 *A.*2d 1168, 1171 (1991).

In Selobyt's case, *certiorari* would be the relevant writ as it traditionally had been utilized to review agency determinations. *In re LiVolsi,* 85 *N.J.* 576, 594, 428 *A.*2d 1268, 1277 (1981). The other writs are not applicable. *Mandamus* was properly utilized to require governmental officials to perform only ministerial duties. *McKenna v. N.J. Highway Auth.,* 19 *N.J.* 270, 275–76, 116 *A.*2d 29, 32 (1955). *Quo warranto* had been utilized to challenge the right of an individual to hold public office. *N.J. State Lodge– Fraternal Order of Police v. Aaron,* 39 *N.J.Super.* 423, 427, 121 *A.*2d 402, 404 (App.Div.), *certif. denied,* 22 *N.J.* 138, 123 *A.*2d 594 (1956). *Prohibition* had been used to block proceedings when a tribunal was acting manifestly beyond its jurisdiction. *Alexander v. Crollott,* 199 *U.S.* 580, 26 *S.Ct.* 161, 50 *L.Ed.* 317 (1905).

The County Facility is incorrect in its interpretation of *Cohen, supra,* 240 *N.J.Super.* at 199–200, 572 *A.*2d at 1196–97, as limiting *R.* 4:69–1 to *mandamus* proceedings. *Cohen* merely analyzed whether the action challenged in that case could be considered ministerial or discretionary, which would not fall within the historic writ of *mandamus.* The decision did not conclude that only *mandamus* was encompassed within *R.* 4:69–1. Indeed, such a conclusion would be in error.

 In its second argument, the County Facility recognizes that when determining the proper judicial forum for an administrative appeal, whether an agency can be considered state or county is irrelevant if the agency has only local authority. *Montclair Township, supra,* 222 *N.J.Super.* at 446, 537 *A.*2d at 694–95; *Mathesius v. Mercer County Improvement Auth.,* 177 *N.J.Super.* 626, 634, 427 *A.*2d 608, 612 (App.Div.), *certif. denied,* 87 *N.J.* 425,

434 *A.*2d 1097 (1981). Though judicial review of actions taken by an agency with only local authority must be brought in the Law Division, *Mathesius, supra,* 177 *N.J.Super.* at 634, 427 *A.*2d at 612, the County Facility nevertheless argues that it operates "under the jurisdiction of the State Department of Corrections," and that this appeal, therefore, properly belongs in the Appellate Division.

Preliminarily, it is beyond cavil that the Keough–Dwyer County Correctional Facility does not qualify as a state agency under the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –24. The APA defines state agencies as including "each of the principal departments in the executive branch of the State Government, and all boards, divisions, commissions, agencies, departments, councils, authorities, offices or officers within any such departments now existing or hereafter established and authorized by statute to make, adopt or promulgate rules or adjudicate contested cases, except the office of the Governor." *N.J.S.A.* 52:14B–2(a).

Although the Department of Corrections, which is a state agency, extensively regulates county correctional facilities, like the Keough–Dwyer Facility, the county facilities are not organized within the Department of Corrections. *N.J.S.A.* 30:1B–8. Moreover, there is no statute authorizing county correctional facilities to adjudicate contested cases and promulgate rules. The Keough–Dwyer Facility is, therefore, not a state agency under the APA.

It is true, however, that the Legislature has provided the Commissioner of the Department of Corrections with much authority to regulate adult county correctional facilities. *E.g., N.J.S.A.* 30:1–15; *N.J.S.A.* 30:1B–3, –6, –10. In fact, the Legislature has even given the Commissioner authority to shut down county correctional facilities that are "in willful and continuous disregard of the minimum standards for such facilities promulgated by the department. . . ." *N.J.S.A.* 30:8–57a–c.

Moreover, in *County of Morris v. Fauver,* 153 *N.J.* 80, 90, 707 *A.*2d 958, 962 (1998), the Supreme Court acknowledged that, since the early 1980's, to ameliorate prison overcrowding, "the Commissioner has had the authority to house state prisoners in county

facilities through the executive orders [under the Civil Defense and Disaster Control Act, *N.J.S.A.* App. A:9–30,] as well as under the [County Correctional Policy Act, *N.J.S.A.* 30:8–16.3 to –16.12,] and financial assistance contracts with the counties." *See County of Gloucester v. State,* 132 *N.J.* 141, 623 *A.*2d 763 (1993); *Worthington v. Fauver,* 88 *N.J.* 183, 440 *A.*2d 1128 (1982).

Pursuant to legislative authority, the Commissioner has indeed promulgated extensive rules governing the programs, services, care, treatment, and discipline of adult inmates incarcerated in county correctional facilities. *N.J.A.C.* 10A:31–1 to –29.4. The Commissioner's regulations seek to develop a unified and integrated system, so far as practicable, given the State and county interests that coexist. For example, inmates at State prisons and county facilities have corresponding rights to a disciplinary hearing. *See N.J.A.C.* 10A:4–9.8; *N.J.A.C.* 10A:31–16.12. Both have the right to an internal appeal of the disciplinary determination. *See N.J.A.C.* 10A:4–11.1; *N.J.A.C.* 10A:31–16.15.

Although the Commissioner's rules that govern adult county correctional facilities are extensive, they do not incorporate every State standard. For example, the rules found at *N.J.A.C.* 10A:3–5.10 and 5.11(f), governing the testing of urine, with which Selobyt claimed the Keough–Dwyer Facility failed to comply, are not expressly applicable to county facilities.[4] These rules are applicable only "to State correctional facilities under the jurisdiction of the Department of Corrections." *N.J.A.C.* 10A:1–2.1(a).

Thus, there are differences between the Department's rules for county correctional facilities and those that pertain to state correctional facilities. Although the extensive legislative and regulatory attention that has been paid to county correctional facilities demonstrates the State's strong interest in the incarceration of in-

---

[4] As a State prisoner incarcerated in a county correctional facility, Selobyt was subject to *N.J.A.C.* 10A:4, which governs State inmate discipline. *N.J.A.C.* 10A:31–16.1(e). Besides not including the urine testing rules, which appear at 10A:3, the State disciplinary rules cover only internal administrative appeals and do not address procedures for appeal to the courts.

mates in county facilities, it is not the extent of state regulation upon an entity that provides the Appellate Division with review jurisdiction.

■ Appeals of action or inaction of regulated entities is to the Law Division when the entity's authority is confined to a single locality, even if the entity involved can be considered an agency of the State, for most purposes, such as, for example, county boards of taxation and local boards of health. *Township of Gloucester v. Bd. of Educ. of Black Horse Pike Reg'l Sch. Dist.,* 50 *N.J.Super.* 437, 444, 142 *A.*2d 689, 693 (Law Div.1958). So, similarly, the Burlington County Construction Board of Appeals, even though it was organized under the Department of Community Affairs, was found to operate only locally. *Bell v. Township of Bass River,* 196 *N.J.Super.* 304, 310, 482 *A.*2d 208, 211 (Law Div.1984). As another example, the Essex County Board of Taxation was found to have only local jurisdiction. *Baldwin, supra,* 27 *N.J.Super.* at 242, 99 *A.*2d at 215. Even the Hackensack Meadowlands District Construction Board of Appeals, which heard appeals originating in fourteen municipalities in Bergen and Hudson Counties that comprised the District, was found to be local and not a state administrative agency. *Walsh Trucking Co. v. Hackensack Meadowlands Dist. Constr. Bd. of Appeals,* 240 *N.J.Super.* 525, 528, 573 *A.*2d 951, 952–53 (App.Div.1990).

■ Although the governing body of the county correctional facility must operate in accordance with State law, including the Department of Corrections' regulations, the governing body retains authority for the expenditure of funds and the day-to-day operation of the facility. While the county facility may also house state prisoners from time to time, the authority of the Keough–Dwyer Facility remains distinctly local. It has no jurisdiction to exercise any authority beyond Sussex County, its geographic boundary. The facility, for example, may not transfer its prisoners to any other county facility without authorization by the Superior Court. *N.J.S.A.* 2C:43–10g.

Instead of engaging in an agency-specific analysis of the extent of state regulation upon the agency, as the Keough–Dwyer Facility's argument invites, the jurisdictional question is answered exclusively by the scope of the agency's authority. Because the authority of the Keough–Dwyer Facility is peculiarly local, we find it unnecessary to assess either the scope of the pertinent state regulation or the quality of operational discretion retained by the local governing body.

■ "[P]roceedings relating to an administrative body with authority confined to a single locality, in this case a county, should be brought in the Law Division even though the defendant may be classified for most purposes as an agency of the State." *Baldwin, supra,* 27 *N.J.Super.* at 242, 99 *A.*2d at 215. Accordingly, Selobyt's appeal from the Keough–Dwyer Correctional Facility's disciplinary action must be filed in the Law Division as an action in lieu of prerogative writs.

Accordingly, we transfer this matter to the Law Division, for further proceedings under *R.* 4:69–1, actions in lieu of prerogative writs, *see R.* 1:13–4(a), and dismiss Selobyt's appeal pending in the Appellate Division.