901 A.2d 312

INFINITY BROADCASTING CORPORATION; AND INNER CITY BROADCASTING CORPORATION, APPELLANTS–RESPONDENTS, v. NEW JERSEY MEADOWLANDS COMMISSION, DEFENDANT–APPELLANT, AND ENCAP GOLF HOLDINGS, LLC., INTERVENOR–RESPONDENT.

Argued January 17, 2006—Decided June 27, 2006.

*Valerie W. Haynes,* Deputy Attorney General, argued the cause for appellant (*Nancy Kaplen,* Acting Attorney General of New Jersey, attorney; *Michael J. Haas,* Assistant Attorney General, of counsel).

*Gregory J. Bevelock* argued the cause for intervenor-respondent (*DeCotiis, Fitzpatrick, Cole & Wisler,* attorneys; *Eric D. Wisler,* of counsel).

*Kenneth D. McPherson, Jr.* argued the cause for respondents (*Waters, McPherson, McNeill,* attorneys; *Mr. McPherson and Eric D. McCullough,* on the briefs).

Justice RIVERA–SOTO delivered the opinion of the Court.

This appeal requires that we address the question whether an appeal from a decision of the New Jersey Meadowlands Commission (Meadowlands Commission)[1] lies directly in the Appellate Division of the Superior Court or in an action in lieu of prerogative writs in the Law Division of the Superior Court. Distinguishing actions challenging the Meadowlands Commission's adoption of amendments to its landfill closure and redevelopment agreements from actions challenging the land use and takings aspects of those

---

[1] Originally named the Hackensack Meadowland Development Commission, *see L.* 1968, *c.* 404, §§ 1–86, codified at *N.J.S.A.* 13:17–1 to –86, the Meadowlands Commission was renamed the New Jersey Meadowlands Commission effective August 27, 2001. *L.* 2001, *c.* 232, § 2, codified at *N.J.S.A.* 13:17–3.1 ("On and after the effective date of this act, any reference in any law, rule, regulation, order, contract or document to the 'Hackensack Meadowlands Development Commission' shall be deemed to mean and refer to the 'New Jersey Meadowlands Commission.' ").

governmental actions, the Appellate Division held that an appeal from the former lies with the Appellate Division, but review of the latter must be had in the form of an action in lieu of prerogative writs in the trial court.

We hold that, with the specific exception of actions in condemnation or inverse condemnation, venue for which lie in the Law Division of the Superior Court, the Meadowlands Commission's actions are state agency actions reviewable as of right in the Appellate Division. We further hold that the Appellate Division nevertheless retains the discretion, in an appropriate case, to retain jurisdiction in an appeal from the action of a state agency, but to refer the matter to the Law Division or to the agency for such additional fact-finding as it deems necessary to a just outcome.

## I.

The Meadowlands Commission was "established in, but not of, the Department of Community Affairs [as] a body corporate and politic...." *N.J.S.A.* 13:17–5(a). Specifically, the Meadowlands Commission "constitute[s] a political subdivision of the State established as an instrumentality exercising public and essential governmental functions, and the exercise by the commission of the powers conferred by [the Hackensack Meadowlands Reclamation and Development Act, *N.J.S.A.* 13:17–1 to –86] shall be deemed and held to be an essential governmental function of the State." *Ibid.* The Legislature declared its purpose in creating the Meadowlands Commission as follows:

It is hereby declared that there are approximately 21,000 acres of salt water swamps, meadows and marshes which are commonly known as meadowlands, in the lower Hackensack river basin; that extensive portions of this area have so far resisted comprehensive development because of their low elevation, exposure to tidal waters, unfavorable soil composition, and, in some instances, their distribution among many municipalities; that this land acreage is a land resource of incalculable opportunity for new jobs, homes and recreational sites, which may be lost to the State through piecemeal reclamation and unplanned development; that much of this acreage may be subject to redevelopment under section 3, Article VIII, of the State Constitution; that the orderly, comprehensive development of these areas,

due to their strategic location in the heart of a vast metropolitan area with urgent needs for more space for industrial, commercial, residential, and public recreational and other uses, can no longer be deferred; that insofar as meadowlands are State-owned lands they are an asset of the fund for the support of free public schools whose integrity may not be impaired; that while the State, in the name of the people, has an obligation to assert its interests in meadowlands that are clearly State-owned, it has an equal obligation to establish a framework within which private owners may assert their interests and take title to meadowlands that are privately-owned; that these areas need special protection from air and water pollution and special arrangements for the provision of facilities for the disposal of solid waste; that the necessity to consider the ecological factors constituting the environment of the meadowlands and the need to preserve the delicate balance of nature must be recognized to avoid any artificially imposed development that would adversely affect not only this area but the entire State; that it is the purpose of this act to meet the aforementioned needs and accomplish the aforementioned objectives by providing for a commission transcending municipal boundaries and a committee representing municipal interests which will act in concert to reclaim, plan, develop and redevelop the Hackensack meadowlands; and to safeguard fully the interests of the fund for the support of free public schools, all to the extent and manner provided herein.

[*N.J.S.A.* 13:17–1.]

The Legislature also defined, with great specificity, the geographical boundaries of the district (District) subject to the jurisdiction of the Meadowlands Commission. *N.J.S.A.* 13:17–4.

In order to achieve that legislative purpose within the District, the Meadowlands Commission is vested with broad powers. *N.J.S.A.* 13:17–6. Among them, the Meadowlands Commission is empowered "[t]o prepare, adopt and implement a master plan for the physical development of all lands, or a portion thereof, lying within the district; and to adopt and enforce codes and standards for the effectuation of such plan[,]" *N.J.S.A.* 13:17–6(i), and "[b]y contract or contracts with a redeveloper or by its own employees to undertake any development or other project or improvement as it finds necessary to reclaim, develop, redevelop and improve the land within the district[.]" *N.J.S.A.* 13:17–6(j). The Meadowlands Commission's actions in amending its master plan must occur only after a public hearing. *N.J.S.A.* 13:17–9(a). It is against the backdrop of this broad delegation of state power that this appeal must be assessed.

Pursuing the redevelopment of six landfills in the District, the Meadowlands and EnCap Golf Holdings, LLC entered into a landfill closure and redevelopment agreement (EnCap agreement), providing for a phased development. As the Appellate Division explained,

> [i]n phase one, EnCap would close and cap four landfills, and construct a thirty-six-hole golf course facility and "related amenities", such as a hotel or resort complex of 330 to 650 rooms. At EnCap's option, it could also construct up to 1356 apartments or townhouses that would be sold as timeshare units. Phase 2, if EnCap chose to pursue it, would require EnCap to close and cap the remaining landfills and construct another thirty-six-hole golf course facility. The agreement also allowed EnCap to propose additional projects.
>
> [*Infinity Broad. Corp. v. N.J. Meadowlands Comm'n*, 377 *N.J.Super.* 209, 217, 872 *A.*2d 125 (App.Div.2005).]

The Meadowlands Commission announced the EnCap agreement, and the redevelopment plan of which EnCap was a part, in January 2001 and formally adopted the redevelopment plan on February 28, 2001.

Six months later, responding to EnCap's proposed revisions to the first phase of the redevelopment plan, the Meadowlands Commission proposed amendments to the earlier adopted redevelopment plan. These revisions were reflected in a later memorandum between the Meadowlands Commission and EnCap that

> added to Phase 1 an office complex of 750,000 to 1,200,000 square feet that had previously been envisioned as the subject of a separate development agreement. It also allowed EnCap to replace all or part of the timeshare component with "active adult housing," *i.e.*, housing for occupants at least fifty-five years of age. That component was renamed the "residential component" and the maximum number of units was increased to 1400. In addition, the memorandum gave EnCap the option of constructing "village retail centers" totaling 100,000 square feet to serve the project's residential areas.
>
> [*Id.* at 219, 872 *A.*2d 125.]

Infinity Broadcasting Corporation (Infinity) and Inner City Broadcasting Corporation (Inner City), which operate AM radio stations located within the District but outside the area covered by the EnCap agreement, submitted to the Meadowlands Commission an expert report objecting to those amendments and claiming that the height of several of the proposed structures "may have a significant adverse impact on the directional radiation patterns" of

their radio signals. Infinity and Inner City suggested that shorter structures located differently would alleviate their concerns.

Their entreaties did not fall on deaf ears, as the Meadowlands Commission sought to accommodate EnCap's, Infinity's and Inner City's concerns. The Meadowlands Commission staff met with all three entities and fostered cooperation among them. In addition, the Meadowlands Commission adopted a resolution directing En-Cap to work with Infinity and Inner City so as "to avoid signal interference to the greatest extent possible."

As a result of this continuing review process, in March 2002, EnCap proposed additional amendments to the EnCap agreement. Those amendments

> would increase the allowable amount of office space from 1.2 to 1.3 million square feet, the hotel or resort from 600,000 to 660,000 square feet, and the number of residential units from 1400 to 1500. Under those proposed amendments, the non-residential building height limit of twenty-five stories would be maintained, but there would be changes in dwelling unit standards that would permit as many as 150 additional residential units in buildings of six to fifteen stories.
> [*Id.* at 220, 872 A.2d 125.]

The proposals were unacceptable to Infinity and Inner City and, although EnCap continued to meet with them seeking to address their needs, Infinity and Inner City submitted a second expert report that, in effect, took issue with any structure higher than four stories tall. On July 31, 2002, the Meadowlands Commission formally adopted EnCap's March 2002 proposed amendments to the EnCap agreement. In doing so, the Meadowlands Commission again enjoined EnCap to "work with the existing radio station[s] adjacent to the redevelopment area to avoid signal interference to the greatest extent possible." That same day, the Meadowlands Commission and EnCap entered into a second memorandum memorializing the March 2002 proposed amendments.

Infinity and Inner City again objected to the locations and heights of the buildings proposed by EnCap, still claiming that there would be interference with their radio signals. At a public meeting on October 3, 2002, the Meadowlands Commission discussed these concerns and was advised by its staff that, because

they were triggered by the particularities of the site layout, their consideration should be deferred until the Meadowlands Commission considered the "site plan review portion of the process."

In the interim, EnCap did not sit by idly. Six weeks later, on November 25, 2002, EnCap certified to the Meadowlands Commission that it had addressed the concerns of two other radio stations by arranging for their relocation to locations that would not suffer from signal interference. EnCap also certified that it had had similar discussions with Infinity and Inner City and that the latter had demonstrated an interest in "exploring the possibility of relocation."

EnCap proposed a second set of amendments to the EnCap agreement that would reduce the amount of office space and increase the number of residential units in the project. Those amendments also included additional, new uses as part of the project. In respect of the item of particular concern to Infinity and Inner City, the height of the structures in the project,

[t]he December 2002 amendments addressed height in detail, specifying that nonresidential structures could not be more than twenty-five stories. For the residential units, eighty percent had to be in buildings of no more than six stories, while ten percent could be in buildings of seven or eight stories and another ten percent could be in buildings of nine to fifteen stories. Parking facilities could be "7 levels in height."

[*Id.* at 222–23, 872 *A.*2d 125.]

Based on their expert's reports, Infinity and Inner City again objected at public meetings of the Meadowlands Commission held on January 7 and February 26, 2003. The Meadowlands Commission adopted EnCap's second set of amendments, but again enjoined EnCap to "work with the existing radio station[s] adjacent to the redevelopment area to avoid signal interference to the greatest extent possible."

Infinity and Inner City appealed the Meadowlands Commission's adoption of the second set of amendments to the EnCap agreement. The Appellate Division rejected Infinity's and Inner City's challenges to the sufficiency of the procedures afforded

them before the Meadowlands Commission, holding that the Meadowlands Commission

> fulfilled its responsibilities by holding public hearings on the amendments, by providing enough information about the amendments for Infinity and Inner City to oppose them, and by receiving their comments and objections. To the extent the Commission relied on undisclosed communications from EnCap or on a staff recommendation in acting on the amendments, there is no bar to doing so when an agency acts quasi-legislatively.
>
> [*Id.* at 229, 872 *A.*2d 125.]

In respect of Infinity's and Inner City's claims that allowing the redevelopment as approved by the Meadowlands Commission would implicate land use and takings issues, the Appellate Division held as follows:

> Consideration of the land use and takings issues Infinity and Inner City raise would be inappropriate on the record before us. To the extent they argue that the resolutions violated basic principles of land use law, Infinity and Inner City must seek to vindicate their positions in a trial court. Notwithstanding the [Meadowlands] Commission's existence as a State agency, because its land use authority is exercised on a local basis, its actions in that regard must be challenged in a proceeding in lieu of prerogative writs filed in the Law Division. Any cognate issues, such as the takings ground urged, and causes of action arising therefrom, including one for inverse condemnation, must also be advanced, in the first instance, before the Law Division.
>
> The reasons we have articulated for concluding that Rule 2:2–3(a)(2) review is inappropriate are without prejudice or limitation on the rights of Infinity and Inner City to challenge the [Meadowlands] Commission's actions on any basis properly available in a proceeding in lieu of prerogative writs in the Law Division.
>
> [*Id.* at 229–30, 872 *A.*2d 125 (internal citations omitted.) ]

We granted the Meadowlands Commission's petition for certification, *Infinity Broad. Corp. v. N.J. Meadowlands Comm'n,* 185 *N.J.* 264, 883 *A.*2d 1061 (2005), to review the scope of appellate jurisdiction in respect of an appeal from the decision of a state agency. For the reasons that follow, we affirm in part and reverse in part the judgment of the Appellate Division.

## II.

According to Infinity and Inner City, challenges to the Meadowlands Commission's land use decisions are cognizable in the Law Division because the Meadowlands Commission has limited juris-

diction and, in this instance, is exercising an inherently local function. Infinity and Inner City claim that, even if the Meadowlands Commission is a state agency, the subject matter of the issues presented here require the exercise of the Law Division's jurisdiction. In support of that argument, Infinity and Inner City point to the Meadowlands Commission's land-use agency functions and the fact that condemnation actions are heard in the Law Division. They further urge that "the Appellate Division is simply ill-suited for the fact-finding that occurs in all other challenges to land use decisions" and that the state of the record here constitutes one instance where a Law Division hearing is necessary in order to develop a record capable of meaningful appellate review.

The Meadowlands Commission asserts that, as a state agency, its decisions are reviewable on direct appeal to the Appellate Division. In the Meadowlands Commission's view, it is the identity of the governmental actor involved, and not the nature of the action taken, that governs whether a direct appeal lies to the Appellate Division. It also claims that the "single locality" exception to the general rule requiring review of state agency action in the Appellate Division is inapplicable here because the redevelopment project at issue covers realty in four separate municipalities located in two different counties. The Meadowlands Commission further urges that it created an adequate record in respect of the matters at issue and, hence, no remand either to the Meadowlands Commission or to any other entity is necessary. Finally, the Meadowlands Commission notes that, because all that has occurred to date is the adoption of a redevelopment plan, Infinity's and Inner City's challenges are premature; the Meadowlands Commission reckons that their objections will be timely when and if EnCap applies for zoning certification to construct a structure to which they object.

Before the Appellate Division, EnCap sought and received intervenor status. Consistent with its substantive approach before the Appellate Division, EnCap simply reaffirms the positions advanced by the Meadowlands Commission.

### III.

#### A.

We address first Infinity's and Inner City's challenge to the Appellate Division's appellate jurisdiction. Unquestionably, the Meadowlands Commission is a state agency; the very statute that created it makes that conclusion unassailable,[2] a conclusion we have previously endorsed. *Meadowlands Reg'l Redev. Agency v. State*, 63 *N.J.* 35, 46, 304 *A.*2d 545 (1973). Moreover, the Meadowlands Commission's decision to enter into the EnCap agreement and its later amendments constitutes final agency action because the resolutions the agency adopted " 'contain[ed] adequate factual and legal conclusions' " and gave " 'unmistakable notice of [their] finality.' " *Nw. Covenant Med. Ctr. v. Fishman*, 167 *N.J.* 123, 139, 770 *A.*2d 233 (2001) (quoting *In re CAFRA Permit No. 87–0959–5*, 152 *N.J.* 287, 299, 704 *A.*2d 1261 (1997)). Thus, the road for review is clear: "appeals may be taken to the Appellate Division as of right ... to review final decisions or actions of any state administrative agency or officer...." *Rule* 2:2–3(a)(2). *See, e.g., Prado v. State*, 186 *N.J.* 413, 422, 895 *A.*2d 1154 (2006) (holding that appeals from Attorney General's denial of defense to state employee lie in Appellate Division and not in Law Division).

#### B.

That conclusion, however, does not entirely dispose of the inquiry. Infinity and Inner City assert that, because the Meadowlands Commission exercised an inherent local function, one involving the intersection between land use approvals and development agreements, *see generally* Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to –99, the "single locality" exception applies. Infinity

---

[2] *N.J.S.A.* 13:17–5 states: "The commission shall constitute a political subdivision of the State established as an instrumentality exercising public and essential governmental functions, and the exercise by the commission of the powers conferred by this act shall be deemed and held to be an essential governmental function of the State."

and Inner City also claim that, because the Meadowlands Commission's actions were not preceded by the creation of an agency record amenable to appellate review, this cause properly belongs in the Law Division where a record can be developed. We disagree on both counts.

The overarching rule in New Jersey has long been that "every proceeding to review the action or inaction of a *local* administrative agency [is] by complaint in the Law Division and that every proceeding to review the action or inaction of a *state* administrative agency [is] by appeal to the Appellate Division." *Central R.R. Co. v. Neeld*, 26 *N.J.* 172, 184–85, 139 *A.*2d 110, *cert. denied*, 357 *U.S.* 928, 78 *S.Ct.* 1373, 2 *L.Ed.*2d 1371 (1958) (internal citations omitted). As noted in *Pascucci v. Vagott*, 71 *N.J.* 40, 52 n. 2, 362 *A.*2d 566 (1976), "[o]nly two exceptions to this rule . . . have been judicially recognized[:]" the "single locality" exception of *Baldwin Constr. Co. v. Essex County Bd. of Taxation*, 27 *N.J.Super.* 240, 242, 99 *A.*2d 214 (App.Div.), *supplemented after reargument*, 28 *N.J.Super.* 110, 100 *A.*2d 341 (App.Div.1953), *aff'd*, 16 *N.J.* 329, 108 *A.*2d 598 (1954) (action properly lodged in the Law Division challenging action of county/multi-municipality board); and those cases in which a record must be developed as a prerequisite to meaningful appellate review, *Pfleger v. State Highway Dep't*, 104 *N.J.Super.* 289, 291–93, 250 *A.*2d 16 (App.Div.1968) (action to compel condemnation must be brought in the Law Division because it requires creation of a record). *Ibid.* See *Selobyt v. Keough–Dwyer Corr. Facility of Sussex County*, 375 *N.J.Super.* 91, 99, 866 *A.*2d 1018 (App.Div.2005); *Montclair Twp. v. Hughey*, 222 *N.J.Super.* 441, 446, 537 *A.*2d 692 (App.Div.1987).

We address the continuing vitality of the "single locality" exception first. According to *Baldwin Constr. Co. v. Essex County Bd. of Taxation*,

[i]n the allocation of business between the Law Division and the Appellate Division, proceedings relating to an administrative body with authority confined to a single locality, in this case a county, should be brought in the Law Division even though the defendant may be classified for most purposes as an agency of the State. [*Supra*, 27 *N.J.Super.* at 242, 99 *A.*2d 214.]

Subsequently, *Mathesius v. Mercer County Improvement Auth.*, 177 *N.J.Super.* 626, 634, 427 *A.*2d 608 (App.Div.), *certif. denied,* 87 *N.J.* 425, 434 *A.*2d 1097 (1981), explained that "[a]ctions in lieu of prerogative writs against state agencies with only local jurisdiction may be brought in the Law Division." *See also Walsh Trucking Co. v. Hackensack Meadowlands Dist. Constr. Bd. of Appeals,* 240 *N.J.Super.* 525, 573 *A.*2d 951 (App.Div.1990) (holding that construction board of appeals established by the Meadowlands Commission's predecessor was not considered a state agency for purposes of appellate review). Because of the inconsistent results generated by that broad holding, we disavow it. Instead, consonant with our Constitution's grant of appellate jurisdiction to the Appellate Division, *N.J. Const.* art. VI, § 5, ¶ 2 ("Appeals may be taken to the Appellate Division of the Superior Court ... in such other causes as may be provided by law."), we reaffirm the appeals route provided in our Rules of Court, *R.* 2:2–3(a)(2), and we reject the "single locality" exception to that *Rule.*

That conclusion clarifies the scope of appellate review of state agency actions and is entirely in accord with the general practice in respect of state agencies. For example, applications subject to the jurisdiction of the Coastal Area Facilities Review Act (CAF-RA), *N.J.S.A.* 13:19–1 to –33, may address only one location on a single beach in a specific municipality in one county. Yet, those applications have not been subject to the "single locality" exemption. Similarly, the actions of the New Jersey Casino Control Commission, unquestionably a state agency, are geographically limited to Atlantic City by our Constitution. *N.J. Const.* art. IV, § 7, ¶ 2D. Yet, although Section 110a of the New Jersey Casino Control Act provides that "judicial review [of the actions of the New Jersey Casino Control Commission lies] by appeal to the Superior Court in accordance with the Rules of Court[,]" *N.J.S.A.* 5:12–110a, and although we recognize the unique constitutional considerations attendant to matters involving casino gaming, research reveals no case in which appellate review of an action of the Casino Control Commission was sought in a court other than the Appellate Division as required by *R.* 2:2–3(a)(2).

In sum, we see no basis to differentiate between those matters as to which Appellate Division jurisdiction clearly lies, from those matters remitted to the Law Division under the "single locality" exception. On the contrary, that inconsistency underscores our concern that the "single locality" exception generates unnecessary confusion when a straightforward rule of appellate review would suffice. Therefore, we jettison the "single locality" exception to the broad rule that lodges appellate jurisdiction from the actions of state agencies in the Appellate Division.

■ To the extent, then, that the Appellate Division holds that appellate review of the Meadowlands Commission's actions lie in that court, the judgment of the panel is affirmed. However, we reject the panel's reasoning and conclusion that "because [the Meadowlands Commission's] land use authority is exercised on a local basis, its actions in that regard must be challenged in a proceeding in lieu of prerogative writs filed in the Law Division." *Infinity Broad. Corp. v. N.J. Meadowlands Comm'n, supra,* 377 *N.J.Super.* at 230, 872 *A.*2d 125. We reaffirm once more the basic tenet of appellate jurisdiction that, save for condemnation or inverse condemnation actions, appeals from state agency actions lie in the Appellate Division.

■ We next address those specific instances where a record must be developed as a prerequisite to meaningful appellate review of state agency action. It has long been recognized that condemnation actions and, by extension, inverse condemnation actions resulting from state administrative action are properly cognizable in the Law Division. *Schiavone Constr. Co. v. Hackensack Meadowlands Dev. Comm'n,* 98 *N.J.* 258, 486 *A.*2d 330 (1985) (remanding to the Law Division a takings claim arising from administrative action); *Orleans Builders & Developers v. Byrne,* 186 *N.J.Super.* 432, 446, 453 *A.*2d 200 (App.Div.1982) (stating that jurisdiction for developer's takings claim against Pinelands Commission "should be in the Law Division of this court where a factual record can be developed"); *Pfleger v. State Highway Dep't,* 104 *N.J.Super.* 289, 291–93, 250 *A.*2d 16 (App.Div.1968). This is

so because condemnation and inverse condemnation actions, by their very nature, require particularized fact finding and determinations that are best resolved in the Law Division. By definition, then, condemnation and inverse condemnation actions, even when precipitated by state agency action, are cognizable in the first instance in the Law Division, and not in the Appellate Division.

We are left to consider Infinity's and Inner City's claim that, because this case involves land use issues, this case presents one of those unique instances where a hearing before the Law Division is necessary in order to develop a record that would allow meaningful appellate review. We disagree. The Appellate Division held, and we concur, that the Meadowlands Commission "fulfilled its responsibilities by holding public hearings on the amendments, by providing enough information about the amendments for Infinity and Inner City to oppose them, and by receiving their comments and objections." *Infinity Broad. Corp. v. N.J. Meadowlands Comm'n, supra,* 377 *N.J.Super.* at 229, 872 *A.*2d 125. Indeed, the Meadowlands Commission repeatedly accepted each of the submissions made by Infinity and Inner City, as evidenced by its repeated resolutions enjoining EnCap to "work with the existing radio station[s] adjacent to the redevelopment area to avoid signal interference to the greatest extent possible." In that context, no convincing showing has been made for the need for additional fact-finding, and the record before the Meadowlands Commission is sufficient to permit meaningful appellate review.

Finally, Infinity and Inner City attempt to impeach that record by claiming that the Meadowlands Commission relied on matters not of record in making its determination and, hence, additional fact-finding is needed. The Appellate Division rejected that argument. *Ibid.* (holding that "[t]here is no need for more elaborate findings than were made in order to facilitate judicial review, because review of quasi-legislative exercise, especially, requires no more than an ability to understand what action the agency took and why it did so."). We accept the panel's determination of that issue.

## IV.

The Appellate Division's extension of the limited exception to the rule requiring Appellate Division review of state agency actions is rejected. We reaffirm our prior holdings that appeals from state agencies must lie in the Appellate Division unless the matter is a condemnation or inverse condemnation appeal arising from state agency action and, therefore, are cognizable in the Law Division in the first instance. Consistent with that conclusion, we further reject the "single locality" exception as a recognized exception to that broad rule. We also reaffirm the principle that, notwithstanding the limitations on its jurisdiction, the Appellate Division retains the discretion, in an appropriate case, to retain jurisdiction in an appeal from the action of a state agency, but to refer the matter to the Law Division or to the agency for such additional fact-finding as it deems necessary to a just outcome. We hold that this case is not an appropriate case in which to invoke the exception to the clear mandates of *R.* 2:2–3(a)(2).

The judgment of the Appellate Division is affirmed in part and reversed in part. We exercise our original jurisdiction "as may be necessary to the complete determination of [the] cause on review," *N.J. Const.* art. VI, § V, ¶ 3; *R.* 2:10–5, and we enter judgment in favor of the Meadowlands Commission.

*For affirmance in part; reversal in part*—Chief Justice PORITZ and Justices LONG, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—6.

*Opposed*—None.