**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2308-21

IN THE MATTER OF NICOLE-
KIRSTIE LLC,

     Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT
OF ENVIRONMENTAL
PROTECTION,

     Defendant-Respondent.

_____

Argued February 27, 2024 – Decided July 18, 2024

Before Judges Gooden Brown and Natali.

On appeal from the New Jersey Department of Environmental Protection.

Marty M. Judge argued the cause for appellant (Flaster/Greenberg, PC, attorneys; Franklin J. Riesenburger, Marty M. Judge and Daniel C. Epstein, on the briefs).

Willis A. Doerr, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney

General, attorney; Sookie Bae-Park, Assistant Attorney General, of counsel; Willis A. Doerr, on the brief).

PER CURIAM

In this appeal, plaintiff Nicole-Kirstie, LLC (Nicole-Kirstie) requests we reverse a purported final agency decision of the New Jersey Department of Environmental Protection (NJDEP), related to the scope of its environmental investigatory and remedial responsibilities at the former Dorchester Shipyard, an industrial site located along the Maurice River. The matter returns after we dismissed Nicole-Kirstie's previous appeal without prejudice, concluding the challenged email from NJDEP was not a final agency action pursuant to Rule 2:2-3(a)(2) and directing NJDEP to issue a further decision adopting or rejecting the position set forth therein. See In re Nicole-Kirstie, LLC v. N.J. Dep't. of Env'tl. Prot., No. A-2695-20 (App. Div. Sept. 29, 2021). Because we conclude NJDEP's subsequent decision lacks the necessary factual findings to permit thorough appellate review, we remand for further proceedings in accordance with this opinion.

## I.

Dorchester Industries, Inc. (Dorchester) owned and operated a ship building facility (Site) at which it ceased operations in June 1998, triggering "notification and remediation requirements" under the Industrial Site Recovery

2

Act, N.J.S.A. 13:1K-6 to -14 (ISRA). In March 1999, Paul R. Porreca was appointed assignee for the benefit of Dorchester's creditors in the probate matter involving the disposition of the estate of Dorchester's principal. Throughout 2000, Porreca and NJDEP corresponded regarding the investigation and remediation plans for the Site.

NJDEP filed a verified complaint in the probate matter seeking to compel remediation in 2001, alleging Dorchester had failed to comply with ISRA and the Site was a "suspected source[] of soil, groundwater, and surface water pollution." One year later, the court entered a consent order requiring Porreca to investigate and begin remediation of specific areas of the property. In the following years, Porreca worked to remediate the Site with NJDEP's oversight.

In 2004, NJDEP issued a remedial investigation workplan approval letter which identified specific areas of concern, including the potential need for sampling of the sediment of the Maurice River. The letter confirmed NJDEP's acceptance of Porreca's position that "no further ecological investigations are needed" as "there [was] no indication that contaminants of concern have migrated off-site." NJDEP noted, however, "[i]f future ground water [remedial investigation] activities indicate that groundwater contaminants are migrating

toward the river at concentrations above their respective NJ Surface Water Quality Standard, then surface water sampling may be required."

In 2005, Nicole-Kirstie entered negotiations to purchase the Site. To facilitate the sale, Porreca and NJDEP entered a remediation agreement which noted the sale to Nicole-Kirstie but named Porreca as the "[r]esponsible [p]erson[] executing this [r]emediation [a]greement and responsible for conducting the remediation" of the Site and referred to the 2004 workplan approval to detail Porreca's responsibilities.

The agreement also stated "[e]xcept as otherwise set forth herein, . . . the NJDEP does not release any person from any liabilities or obligations such person may have pursuant to ISRA and the ISRA regulations, or any other applicable authority, nor does the NJDEP waive any of its rights or remedies pursuant thereto." The agreement further provided it was "binding, jointly and severally, on each signatory, its successors, assignees and any trustee in bankruptcy or receiver appointed pursuant to a proceeding in law or equity."

Following finalization of the sale in March 2006, NJDEP "demanded that [Porreca] conduct sampling in the Maurice River." It reasoned "[g]iven the nature of the discharge, there is no reason to believe that the areas between and potentially beyond the contaminated samples are [not] also contaminated."

Porreca expressed he was reluctant to conduct the sampling based on "the enormity of the costs if contaminants were found . . . the historic dredging of the river by the United States Army Corps of Engineers (which it is undisputed in the past placed spoils on the shipyard site), [and] known contamination by numerous other industries located along the river."

In June 2006, Porreca filed a Verified Complaint for Settlement of Sixth Interim Account and Further Relief in the probate matter, in which he alleged NJDEP "introduced new demands namely sampling in the Maurice River itself . . . which not only are unreasonable and unnecessary, but are impossible to perform at this juncture because [Porreca] simply does not have the funds and has no way of generating the same." Porreca sought to compel NJDEP to waive its demand for sediment sampling. NJDEP responded the relief requested "would run counter to [ISRA]," the 2002 consent order, and the 2005 remediation agreement. It noted sampling of the river sediments was first raised in October 2004, and the remediation agreement expressly reserved NJDEP's right to order further remediation.

Significantly, NJDEP also filed a counterclaim in which it asserted Porreca failed to fully remediate the Site in violation of ISRA and the New Jersey Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 to -23.24

A-2308-21

(Spill Act), and requested the court compel Porreca to conduct the requested sampling and pay certain penalties and costs. NJDEP did not join Nicole-Kirstie despite its knowledge Nicole-Kirstie had purchased the Site.

In October 2006, following a two-day bench trial, the court issued an order discharging Porreca as assignee and dismissing NJDEP's counterclaim "as to its exceptions to plaintiff's final account and also as to its request for the imposition of costs and penalties." The order does not reflect the court's rationale, nor did it address Porreca's and NJDEP's requests for injunctive relief. The parties have advised the transcript from the hearing is no longer available, but they did not submit a statement of proceedings in lieu of a transcript, or otherwise attempt to reconstruct the record pursuant to Rule 2:5-3(f). NJDEP failed to appeal the October 17, 2006 order.

According to the parties, there was no further communication between NJDEP and Nicole-Kirstie or any other party associated with the Site until June 2010.[1] Following passage of the 2009 Site Remediation Reform Act, N.J.S.A. 58:10C-1 to -29 (SRRA), Nicole-Kirstie engaged a Licensed Site Remediation Professional (LSRP), Timothy Mangold, as required because the Site's remediation was "technically still ongoing." Mangold subsequently "conducted

---

[1] The 2010 communication is not included in the record before us.

A-2308-21

continued investigations into groundwater and other areas of concern." In May 2016, he submitted a remedial investigation report indicating the investigation was complete. NJDEP and Mangold corresponded throughout 2016 and 2017 regarding the alleged need for further sediment sampling. As Mangold explained in a 2021 certification, he sampled the Maurice River's water and sediment and submitted the results to NJDEP in May 2016, but NJDEP continued to demand additional sampling and evaluation. NJDEP initiated direct oversight of the remediation after determining the investigation was incomplete due to the lack of sampling.

In February 2019, and despite the order entered after the probate trial, NJDEP and Nicole-Kirstie entered an Administrative Consent Order. The consent order required Nicole-Kirstie to "remediate . . . all hazardous substances, hazardous wastes, and pollutants discharged at the Site," complete the remedial investigation by June 2020, and pay a $12,500 civil penalty. The order does not specifically mention or discuss sediment sampling, or any effect of the 2006 probate litigation on Nicole-Kirstie's responsibilities.

Following entry of the consent order, the parties continued to dispute whether the 2006 court order determined the investigation of impacts to the Maurice River was complete and whether that order applied to Nicole-Kirstie.

A-2308-21

According to Mangold's 2021 certification, the claim for further investigation of the Maurice River was the sole issue outstanding preventing him from issuing a site-wide Response Action Outcome to close the case. Mangold certified he investigated his and NJDEP's file regarding the Site, consistent with his responsibilities under the SRRA, and located an internal memorandum written by NJDEP Assistant Commissioner for Site Remediation Mark Pedersen which stated, in discussing the 2006 litigation, "[t]he Superior Court absolved the responsible party of the requirement to test the sediments in the Maurice River."[2] That, in turn, sparked further unsuccessful attempts at discussion between Nicole-Kirstie and NJDEP regarding the effect of the 2006 order.

NJDEP sent Nicole-Kirstie a letter in November 2020 formally advising the remedial investigation was still not complete, as required by the 2019 consent order. It asserted:

> Nicole-Kirstie, LLC's position with respect to the 2006 Court Order is without merit. Nicole-Kirstie, LLC is not a party to the 2006 Court Order entered into solely between the [NJDEP] and Dorchester and the 2006 Court Order is not binding or have any other impact [sic] on future property owners. Nicole-Kirstie, LLC remains fully responsible under the [2019 consent order] and applicable environmental statutes.

---

[2] This memo too, although listed in the Statement of Items Comprising the Record on Appeal, was not included in the record before us.

In response, Mangold sent an email to NJDEP outlining his and Nicole-Kirstie's position that the 2006 order controlled and did not require any additional investigation of the Maurice River. Specifically, he argued the order finally resolved the ISRA case for the Site, including "[t]he issue of any requirement to sample the Maurice River and its sediments, and the remediation of same," and stressed NJDEP's failure to appeal that order. Mangold also noted Nicole-Kirstie actively participated in the proceedings culminating in the 2006 order despite being specifically excluded as a responsible party by NJDEP.

NJDEP replied April 14, 2021 with a one-paragraph email providing its "final thoughts on the matter." It explained "[t]he applicability of the 2006 [c]ourt [o]rder to [Nicole-Kirstie] is an issue that has been carefully considered by" NJDEP and reasoned "the 2006 [o]rder does not operate as a final remediation document (i.e. a No Further Action Letter or Response Action Outcome), and does not provide language stating that it should be considered as such." NJDEP concluded the order resolved "a remediation agreement and litigation between [NJDEP] and [Dorchester], neither of which was Nicole-Kirstie a party to," and nothing in that order provided it would be binding on parties other than NJDEP and Dorchester. It noted Nicole-Kirstie was not joined in the litigation because "it was not a necessary party under R[ule] 4:28."

On May 28, 2021, Nicole-Kirstie filed a Notice of Appeal challenging the NJDEP's April 2021 email. On our own motion, we dismissed the appeal and concluded "the email does not constitute an appealable final agency decision of the NJDEP under Rule 2:2-3(a)(2)." Nicole-Kirstie, No. A-2695-20. We also remanded the matter "for the Commissioner to issue a decision either adopting or rejecting the position espoused in the [Deputy Attorney General (DAG)]'s April 14, 2021 email, without prejudice to the NJDEP arguing on any future appeal from the Commissioner's disposition that the appeal is time barred and should have been filed before the DAG's email."

In response to our order, NJDEP issued a February 16, 2022 letter in which it explained its "final decision relevant to this matter is encapsulated by the February 19, 2019 Administrative Consent Order . . . which outlines Nicole-Kirstie's remedial obligations" under various statutes, including ISRA, SRRA, and the Spill Act. It stated the 2021 email "merely reiterates that the [consent order] is a final order and does not convey [NJDEP]'s 'final thoughts on this matter' or affect the underlying [consent order]." Because Nicole-Kirstie never appealed that order, NJDEP concluded it "remained in full force and effect." This appeal followed.

10

NJDEP subsequently moved to dismiss the appeal as time-barred. In support, it argued Nicole-Kirstie's appeal actually sought to challenge the 2019 consent order, the "only final agency decision regarding the property," and as such was untimely. Additionally, NJDEP contended Nicole-Kirstie was aware of the 2006 litigation and resulting order at the time it occurred but never raised it during negotiations leading to the 2019 consent order, or in the two years following its issuance.

Nicole-Kirstie responded its appeal was "manifestly timely" as it was filed within forty-five days of the February 2022 letter "issued in response to an Order of this Court expres[s]ly remanding the matter to the NJDEP for the purpose of making what amounts to its final agency action determination." We denied NJDEP's motion on June 14, 2022, with directions for the merits panel to "consider, among any other issues presented, the appealability of the alleged agency action(s) and the timeliness of the appeal."

## II.

Before us, Nicole-Kirstie reprises its argument that the 2006 probate matter and resulting orders bar NJDEP from requiring it to take samples of the Maurice River sediment under res judicata and the entire controversy doctrine. In response, NJDEP maintains neither preclusive doctrine applies as Nicole-

A-2308-21

Kirstie was not a party to the 2006 litigation nor the underlying 2005 remediation agreement between Porreca and NJDEP. Additionally, it asserts this case involves Nicole-Kirstie's obligations under the 2019 consent order, while the 2006 probate matter involved Porreca's request to be relieved from the 2005 remediation agreement. NJDEP also renews its contention that the appeal is time-barred. For the reasons that follow, we are convinced the record before us is insufficient to permit a proper analysis and resolution of these issues.

A final agency action is "characterized by findings of fact, conclusions of law, a definitive ruling, and a clear statement that the interested party may seek review of the decision and the manner in which that may be accomplished." Silviera-Francisco v. Bd. of Educ., 224 N.J. 126, 139 (2016) (citing De Nike v. Bd. of Trs., Emps. Ret. Sys. of N.J., 34 N.J. 430, 435-36 (1961)). "A state agency rendering a final agency decision must explain the specific reasons for its determination." In re Orban/Square Props., LLC, 461 N.J. Super. 57, 77 (App. Div. 2019). A decision lacking "a reasoned explanation based on specific findings of basic fact . . . does not enable us to properly perform our review function." Blackwell v. Dep't. of Corrs., 348 N.J. Super. 117, 122-23 (App. Div. 2002) (quoting Lister v. J.B. Eurell Co., 234 N.J. Super. 64, 73 (App. Div. 1989)).

The basis for the agency's action "must be discernible from the record," and where "the absence of particular findings hinders or detracts from effective appellate review, the court may remand the matter to the agency for a clearer statement of findings and later reconsideration." In re Renewal Application of TEAM Acad. Charter Sch., 247 N.J. 46, 75 (2021) (quoting In re Red Bank Charter Sch., 367 N.J. Super. 462, 476 (App. Div. 2004) and In re Vey, 124 N.J. 534, 544 (1991)). In this regard, Rule 2:5-5(b) provides:

> At any time during the pendency of an appeal from a state administrative agency, if it appears that evidence unadduced in the proceedings below may be material to the issues on appeal, the appellate court, on its own motion . . . may order, on such terms as it deems appropriate, that the record on appeal be supplemented by the taking of additional evidence and the making of findings of fact thereon by the agency below or, in exceptional instances, by a judge of the Superior Court especially designated for that purpose.

As our Supreme Court recently explained, "the Appellate Division retains the discretion, in an appropriate case, to retain jurisdiction in an appeal from the action of a state agency, but to refer the matter to the Law Division or to the agency for such additional fact-finding as it deems necessary to a just outcome." In re Protest of Cont. for Retail Pharm. Design, Constr., Start-Up & Operation, 257 N.J. 425, ___ (2024) (slip op. at 14-15) (quoting Infinity Broad. Corp. v. N.J. Meadowlands Comm'n, 187 N.J. 212, 227 (2006)). And we, as well as the

Supreme Court, have in fact remanded to various agencies for fact finding and further development of the record in accordance with the Rule. See, e.g., Am. Civil Liberties Union of N.J. v. Hendricks, 233 N.J. 181, 201 (2018) (remanding to State Secretary of Higher Education to develop a record "through the crucible of an adversarial process" regarding nature of religious schools' curriculum and how grant fund projects would be applied in those schools); Atl. City Showboat, Inc. v. Dep't of Cmty. Affairs, 331 N.J. Super. 40, 42 (App. Div. 2000) (remanding challenge to casino design regulations to Casino Control Commission and Department of Community Affairs for joint hearing).

After a thorough review of the record before us, we are convinced several outstanding factual questions exist which preclude our determination of whether res judicata and/or the entire controversy doctrine apply to bar NJDEP from requiring Nicole-Kirstie to sample and remediate the Maurice River sediments, and of whether the 2022 letter or the 2019 consent order represents NJDEP's final agency action on that point. As noted, neither the letter nor the consent order contain factual findings regarding the 2006 litigation or its effect on Nicole-Kirstie's responsibilities. Although its April 2021 email indicated NJDEP had "carefully considered" the issue, the record does not explain which

facts supported that consideration, or whether NJDEP considered them before or after the 2019 consent order was entered.

Simply put, the record is devoid of certain crucial facts related to the 2006 litigation. Specifically, it does not appear the NJDEP made any factual findings at any time as to the following: (1) the outcome of Porreca's request for an order "[c]ompelling the NJDEP to waive and relinquish its new demands" for sediment sampling; (2) the outcome of NJDEP's counterclaim requesting an order "[c]ompelling [Porreca] to conduct sampling"; (3) the basis for the court's October 17, 2006 order "dismiss[ing] the [c]ounterclaim filed by the [NJDEP] as to its exceptions to [Porreca]'s final account and . . . its request for the imposition of costs and penalties"; and (4) why, given NJDEP's knowledge of the dispute regarding sediment sampling and its participation in the 2006 litigation, it did not specifically require Nicole-Kirstie to sample and remediate the Maurice River sediments in the 2019 consent order.

We conclude these "unadduced" facts are "material to the issues on appeal," R. 2:5-5(b), and "necessary to a just outcome," In re Protest, 257 N.J. at ___ (slip op. at 14-15) (quoting Infinity Broad. Corp., 187 N.J. at 227). The court's rationale, the outcomes of Porreca's and NJDEP's requests for injunctive relief in 2006, and the parties' actions in response to that litigation may directly

bear upon whether NJDEP's demand for sediment sampling in the Maurice River was "finally determined on the merits" by the probate court and thus "cannot be relitigated . . . in a new proceeding," Velasquez v. Franz, 123 N.J. 498, 505 (1991) (discussing res judicata), and whether preclusion based on NJDEP's failure to bring its claim against Nicole-Kirstie in 2006 would be "unfair in the totality of the circumstances," Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (discussing the entire controversy doctrine). We cannot determine whether the 2006 litigation should be given preclusive effect without a full understanding of its outcome. Similarly, we cannot determine whether Nicole-Kirstie's appeal is timely without a full understanding of precisely what NJDEP considered in its determination of the issue, and when it did so.

We therefore remand this matter to NJDEP pursuant to Rule 2:5-5(b) for it to make the factual findings detailed above. The proceedings on remand shall be completed within ninety days and NJDEP shall file its decision with the Clerk's Office as soon as practicable thereafter.

Remanded to the NJDEP for further proceedings. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2308-21